RED ROOSTER CONSTRUCTION COMPANY *v.* RIVER ASSOCIATES, INC., ET AL.
(14403)

PETERS, C. J., CALLAHAN, BORDEN, KATZ and F. X. HENNESSY, Js.

Argued November 4, 1992—decision released February 9, 1993

*William J. Egan,* with whom, on the brief, was *Carol A. Fantozzi,* for the appellant (plaintiff).

*Geoffrey A. Hecht,* with whom, on the brief, were *Bernard J. Virshup, Milton I. Caplan* and *John R. Scanlon,* for the appellees (defendant Connecticut Savings Bank et al.).

BORDEN, J. This appeal arises from an action brought by the plaintiff, Red Rooster Construction Company (Red Rooster), to foreclose a mechanic's lien on the property of the defendant River Associates, Inc. The plaintiff appeals[1] from the judgment of the trial court rendered in favor of the defendants River Associates, Inc. (River Associates), Connecticut Savings Bank (bank), and Connecticut Attorney's Title Insurance Company (title company). The trial court concluded that the plaintiff's mechanic's lien was invalid.

Red Rooster claims that the trial court improperly concluded that: (1) the bank, as a mortgagee of the property, was an owner of the property pursuant to General Statutes § 49-34[2] and was thereby entitled to notice of the filing of the lien; (2) there was no evidence that Red Rooster had recorded a notice of lis pendens

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

[2] General Statutes § 49-34 provides: "CERTIFICATE OF LIEN TO BE RECORDED AND NOTICE GIVEN TO OWNER. A mechanic's lien is not valid, unless the person performing the services or furnishing the materials, (1) within ninety days after he has ceased to do so, lodges with the town clerk of the town in which the building, lot or plot of land is situated a certificate in writing, which shall be recorded by the town clerk with deeds of land, (A) describing the premises, the amount claimed as a lien thereon, the name or names of the person against whom the lien is being filed and the date of the commencement of the performance of services or furnishing of materials, (B) stating that the amount claimed is justly due, as nearly as the same can be ascertained, and (C) subscribed and sworn to by the claimant, and (2) within the same time, or prior to the lodging of the certificate but not later than thirty days after lodging the certificate, serves a true and attested copy of the certificate upon the owner of the building, lot or plot of land in the same manner as is provided for the service of the notice in section 49-35."

within the one year requirement of General Statutes § 49-39;[3] and (3) the mechanic's lien certificate had not been sworn to within the meaning of § 49-34. We agree with Red Rooster regarding its first and second claims but disagree with its third claim. Consequently, we affirm the judgment of the trial court.

The relevant facts are as follows. River Associates was the record owner of real property located in New Haven. River Associates entered into a contract with Red Rooster in which Red Rooster agreed, for the contract price of $3,376,985.14, to construct condominium units and commercial space on that property. Construction commenced on September 30, 1987.

On August 23, 1989, River Associates ordered Red Rooster to stop working because River Associates did not have sufficient capital to pay for the completion of the project. As of that date, River Associates owed Red Rooster $258,402.36 for work already completed. On September 25, 1989, Red Rooster filed a certificate of mechanic's lien on the land records to secure its claim. Red Rooster served a copy of the certificate on River Associates but did not serve a copy on the bank, an encumbrancer of the property by virtue of a mort-

---

[3] General Statutes § 49-39 provides: "TIME LIMITATION OF MECHANIC'S LIEN. ACTION TO FORECLOSE PRIVILEGED. A mechanic's lien shall not continue in force for a longer period than one year after the lien has been perfected, unless the party claiming the lien commences an action to foreclose it, by complaint, cross-complaint or counterclaim, and records a notice of lis pendens in evidence thereof on the land records of the town in which the lien is recorded within one year from the date the lien was recorded or within sixty days of any final disposition of an appeal taken in accordance with section 49-35c, whichever is later. Each such lien, after the expiration of the one-year period or sixty-day period, as the case may be, without action commenced and notice thereof filed as aforesaid, shall be invalid and discharged as a matter of law. An action to foreclose a mechanic's lien shall be privileged in respect to assignment for trial. With respect to any such lien which was validated in accordance with the provisions of section 49-37a, the one-year period or sixty-day period, as the case may be, shall toll from the date of the validation."

gage given to the bank by River Associates and recorded on the land records on February 4, 1988.

On October 16, 1989, Red Rooster filed this complaint seeking to foreclose its mechanic's lien. The complaint named River Associates and the bank as defendants.[4] On the same date, Red Rooster recorded a notice of lis pendens on the land records and served River Associates and the bank with a copy of the complaint, the certificate of mechanic's lien, and the notice of lis pendens. Pursuant to General Statutes § 49-37 (a),[5] the lien was released upon substitution of a bond with the bank as principal and the title company as surety. The complaint

[4] The complaint also named Kenneth Kraus, the president of River Associates, as a defendant. River Associates and Red Rooster later stipulated that, after a subsequent payment of $50,000 to Red Rooster, River Associates owed $208,402.36 on the contract. Pursuant to that stipulation, Red Rooster withdrew its action as to Kenneth Kraus.

[5] General Statutes § 49-37 (a) provides in relevant part: "DISSOLUTION OF MECHANIC'S LIEN BY SUBSTITUTION OF BOND. JOINDER OF ACTIONS ON CLAIM AND BOND. (a) Whenever any mechanic's lien has been placed upon any real estate pursuant to sections 49-33, 49-34 and 49-35, the owner of that real estate, or any person interested in it, may make an application to any judge of the superior court that the lien be dissolved upon the substitution of a bond with surety, and the judge shall order reasonable notice to be given to the lienor of the application. . . . If the judge is satisfied that the applicant in good faith intends to contest the lien, he shall, if the applicant offers a bond, with sufficient surety, conditioned to pay to the lienor or his assigns such amount as a court of competent jurisdiction may adjudge to have been secured by the lien, with interest and costs, order the lien to be dissolved and such bond substituted for the lien and shall return the application, notice, order and bond to the clerk of the superior court for the judicial district wherein the lien is recorded; and, if the applicant, within ten days from such return, causes a copy of the order, certified by the clerk, to be recorded in the town clerk's office where the lien is recorded, the lien shall be dissolved. Whenever a bond is substituted for any lien after an action for the foreclosure of a lien has been commenced, the plaintiff in the foreclosure may amend his complaint, without costs, so as to make the action one upon the bond with which the plaintiff may join an action to recover upon his claim. . . . Whenever a bond has been substituted for any lien, pursuant to this section, unless an action is brought to recover upon the bond within one year from the date of recording the certificate of lien, the bond shall be void."

was then amended to reflect the substitution of the bond and the addition of the title company as a defendant to the action.[6] The liability of the bank and the title company, however, continued to depend on the validity of the mechanic's lien. See *Six Carpenters, Inc.* v. *Beach Carpenters Corporation,* 172 Conn. 1, 7, 372 A.2d 123 (1976).

After a court trial, the trial court requested the parties to file posttrial memoranda. Thereafter, having agreed with the claims asserted by the defendants in their posttrial briefs, the trial court concluded that Red Rooster's mechanic's lien was invalid because: (1) the bank, as a mortgagee of the property, was an "owner" of the property within the meaning of § 49-34, and was thereby entitled to notice of the filing of the lien; (2) there was no evidence that Red Rooster had recorded a notice of lis pendens within the one year requirement of § 49-39; and (3) the mechanic's lien was not sworn to by Red Rooster within the meaning of § 49-34. This appeal followed.

I

Red Rooster first claims that the trial court improperly concluded that the bank, as a mortgagee of the property, was an owner of the property within the meaning of § 49-34 and was thereby entitled to notice of the filing of the lien. We agree.

Section 49-34 provides that a mechanic's lien is not valid unless the person performing the services or furnishing the materials serves a true and attested copy of the certificate of lien on the *owner* of the property within thirty days after filing the lien. See footnote 2. The issue in this case, therefore, is whether a mortgagee is an owner for the purposes of the statute and is thereby entitled to notice of the filing of the lien.

---

[6] River Associates ceased active participation in this case after the complaint had been amended and has not participated in this appeal. Hereinafter, we will refer to the bank and the title company as the defendants.

Connecticut adheres to the title theory of mortgages. "It is undisputed that a mortgagee in Connecticut, both by common-law rule and by statute, is deemed to have taken legal title upon the execution of a mortgage on real property. General Statutes § 47-36h; *State* v. *Stonybrook, Inc.,* 149 Conn. 492, 496, 181 A.2d 601, cert. denied, 371 U.S. 185, 83 S. Ct. 265, 9 L. Ed. 2d 227 (1962); *Leonard* v. *Bailwitz,* 148 Conn. 8, 12, 166 A.2d 451 (1960); *City Lumber Co. of Bridgeport, Inc.* v. *Murphy,* 120 Conn. 16, 19, 179 A. 339 (1935); *Hartford Realization Co.* v. *Travelers Ins. Co.,* 117 Conn. 218, 224, 167 A. 728 (1933); *Desiderio* v. *Iadonisi,* 115 Conn. 652, 654, 163 A. 254 (1932); *McKelvey* v. *Creevey,* 72 Conn. 464, 467, 45 A. 4 (1900); *Chamberlain* v. *Thompson,* 10 Conn. 243, 251 (1834)." *Conference Center Ltd.* v. *TRC,* 189 Conn. 212, 218, 455 A.2d 857 (1983). At the same time, however, we have recognized that the law of mortgages is built primarily on a series of legal fictions "as a convenient means of defining the various estates to which conveyances may give rise." *Ensign* v. *Batterson,* 68 Conn. 298, 309, 36 A. 51 (1896).

Despite our title theory of mortgages, "[i]n substance and effect . . . and except for a very limited purpose, the mortgage is regarded as mere security . . . and the mortgagor is for most purposes regarded as the sole owner of the land . . . ." *McKelvey* v. *Creevey,* supra, 466–67. The mortgagee "has title and ownership enough to make his security available, but for substantially all other purposes he is not regarded as owner, but the mortgagor is so regarded, always subject of course to the mortgage." Id., 468.

In light of our long use of the term owner to mean the mortgagor; see, e.g., *State* v. *Stonybrook, Inc.,* supra; *Leonard* v. *Bailwitz,* supra; *Waterbury Savings Bank* v. *Lawler,* 46 Conn. 243, 245 (1878) ("the law is well settled that, except as between the immediate

parties, the mortgagor before foreclosure is the owner of the property . . . while the interest of the mortgagee is mere personal estate"); *Mills* v. *Shepard,* 30 Conn. 98, 101 (1861); *Savage* v. *Dooley,* 28 Conn. 411, 413 (1859); *Porter* v. *Seeley,* 13 Conn. 564, 571 (1840); we are not persuaded that the legislature intended the term "owner" in § 49-34 to mean the mortgagee.[7] A long-standing rule of statutory construction is that if a statute "makes use of words [that] have an accepted meaning at the common law they ought, in the absence of other controlling reasons, to be expounded and received with that meaning." *Faulkner* v. *Solazzi,* 79 Conn. 541, 546, 65 A. 947 (1907); see also, e.g., *Seaman* v. *Climate Control Corporation,* 181 Conn. 592, 603, 436 A.2d 271 (1980).

Moreover, to deviate from a construction of the statute that accords the term "owner" its commonly approved usage would create an unnecessary conflict within the statutory scheme. A court should interpret a statutory scheme as a whole with a view toward reconciling its separate parts in order to render a reasonable overall interpretation. See, e.g., *Ganim* v. *Roberts,* 204 Conn. 760, 763, 529 A.2d 194 (1987). General Statutes § 49-33 (a) provides that a person is entitled to a mechanic's lien on a property only if the claim to payment arises by virtue of an agreement with, or consent by, the owner of the land. A mortgagee, however, ordinarily does not have the power to sub-

---

[7] In concluding that an "owner" of a property under General Statutes § 49-34 includes the mortgagee of the property, the trial court principally relied on our decision in *Papa* v. *Greenwich Green, Inc.,* 177 Conn. 295, 416 A.2d 1196 (1979). *Papa* does not support the trial court's decision. In *Papa,* we merely held that the term "owner" included individuals who had purchased condominium units after the lienor had begun to furnish the material or services to the vendor of the property. *Papa* v. *Greenwich Green, Inc.,* supra, 303. Nowhere in our decision in *Papa* did we suggest that a mortgagee of the condominium units was an "owner" pursuant to the statute.

ject the property to claims that may give rise to a mechanic's lien, at least before the mortgagee takes possession of the property upon a default of the underlying obligation. The use of the term "owner" in § 49-33 (a) indicates, therefore, that a mortgagee is not an owner of the property. As a result, we decline to read the legislature's use of "owner" in § 49-34 differently from its meaning in related sections. See, e.g., *Mashantucket Pequot Tribe* v. *Connecticut,* 737 F. Sup. 169, 173 (D. Conn.), aff'd, 913 F.2d 1024 (2d Cir. 1990), cert. denied,     U.S.     , 111 S. Ct. 1620, 113 L. Ed. 2d 717 (1991).

The defendants rely on the canon of statutory construction that a court should avoid a statutory interpretation that places a statute in constitutional jeopardy. See, e.g., *In re Valerie D.,* 223 Conn. 492, 514, 613 A.2d 748 (1992). Specifically, the defendants argue that, because the mortgagee has an interest in the property, the mortgagee is constitutionally entitled to notice of the filing of the lien particularly if, as in this case, the mechanic's lien would take priority over the mortgagee's interest.[8] Consequently, the defendants argue, this canon compels the conclusion that the legislature intended the term "owner" to include the mortgagee. We are not persuaded.

The defendants have not cited a single appellate decision from any state, nor do we know of any, that has held a mechanic's lien statute unconstitutional for failing to provide a mortgagee with notice of the filing of

[8] Red Rooster began to provide material and services to River Associates on September 30, 1987. The bank received its interest pursuant to a mortgage deed recorded on February 4, 1988. General Statutes § 49-33 provides that a mechanic's lien takes priority over any subsequent encumbrance if the material or services on which the lien is based were provided before the subsequent encumbrance originated even if the lien is recorded after that encumbrance. Consequently, in the present case, Red Rooster's lien, if valid, would take priority over the mortgage given to the bank.

the lien.[9] Although we generally seek to avoid a construction of a statute that places it in constitutional jeopardy, a party seeking to invoke this rule must raise, at the least, a plausible constitutional claim. The defendants' argument does not raise such a claim.

The constitutional defect alleged by the defendants sweeps so broadly that it would necessarily compel a conclusion that those entitled to notice would include not only a mortgagee but also every other encumbrancer whose interest might be affected by the filing of the lien.[10] Absent more authority and analysis than the defendants have provided, we are not inclined to impose such a constitutional requirement, nor have the defendants advanced any argument why a mortgagee's interest is somehow constitutionally superior to that of other lien creditors, such as judicial lienors.

---

[9] The defendants have directed our attention to a decision of the Superior Court, *Satter, J.,* in which the mechanic's lien was held to be unconstitutional because it does not give notice of the filing of the lien to the mortgagee. *PDS Engineering & Construction, Inc.* v. *Double RS,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV 90 03786845 (January 6, 1992) (5 Conn. L. Rptr. 306). That decision does not advance the appellees' claim because: (1) the trial court later reversed itself and held that the mechanic's lien statute is constitutional; and (2) we find the reasoning in the original opinion unpersuasive. We simply note that, in the original decision, the Superior Court's extension of our previous decisions in *Roundhouse Construction Corporation* v. *Telesco Masons Supplies Co.,* 168 Conn. 371, 362 A.2d 778, vacated on other grounds, 423 U.S. 809, 96 S. Ct. 20, 46 L. Ed. 2d 29 (1975), on remand, 170 Conn. 155, 365 A.2d 393, cert. denied, 429 U.S. 889, 97 S. Ct. 246, 50 L. Ed. 2d 172 (1976), and *General Electric Supply Co.* v. *Southern New England Telephone Co.,* 185 Conn. 583, 441 A.2d 581 (1981), and the United States Supreme Court's decision in *Connecticut* v. *Doehr,* 500 U.S.    , 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991), was unwarranted by current law and the legal reasoning contained in those decisions.

[10] The defendants' argument, if taken to its logical conclusion, would also cast significant doubt on statutory schemes that grant federal, state or municipal tax liens priority over other encumbrances without notice of the filing of the tax liens to the subsequent encumbrancer. On the basis of the present briefing, we find unpersuasive an argument that casts such a wide shadow.

Furthermore, the United States Supreme Court has summarily affirmed a federal district court's conclusion that a mechanic's lien statute that did not provide for notice to the *owner* was constitutional. *Spielman-Fond, Inc.* v. *Hanson's, Inc.,* 379 F. Sup. 997, 999 (D. Ariz. 1973), aff'd, 417 U.S. 901, 94 S. Ct. 2596, 41 L. Ed. 2d 208 (1974). Although not necessarily entitled to full precedential value; see *Connecticut* v. *Doehr,* 500 U.S.    , 111 S. Ct. 2105, 2113 n.4, 115 L. Ed. 2d 1 (1991); the court in *Connecticut* v. *Doehr,* supra, recognized its summary affirmance in *Spielman-Fond, Inc.,* and stated that mechanic's lien statutes serve to protect *creditors'* preexisting interests in the property at issue. In a concurring opinion, Chief Justice Rehnquist expanded upon the court's discussion of the purpose of mechanic's lien statutes: "Materialman's and mechanic's lien statutes award an interest in real property to workers who have contributed their labor, and to suppliers who have furnished material, for the improvement of real property. Since neither the labor nor the material can be reclaimed once it has become a part of the realty, this is the only method by which workmen or small businessmen who have contributed to the improvement of property may be given a remedy against a property owner who has defaulted on his promise to pay for the labor and the materials. To require any sort of a contested court hearing . . . would largely defeat the purpose of these statutes." Id., 2121–22.

A rule requiring notice to all subsequent encumbrancers would defeat the important purpose of mechanic's lien statutes to provide an inexpensive and simple method for material suppliers and contractors to secure the value of the services or materials that they have added to the property. If notice to all encumbrancers were required, a mechanic's lienor would be required to incur the expense of hiring a lawyer to

search the land records and to provide legal notice to all those claiming an interest in the property. We can divine no constitutional command compelling such an onerous rule, nor do we choose to adopt an interpretation of § 49-34 that would undermine the very purpose of the mechanic's lien statute.

II

Red Rooster next claims that the trial court improperly concluded that there was no evidence that it had recorded a notice of lis pendens within the one year requirement of § 49-39, and that the lien was therefore invalid. We conclude that the trial court abused its discretion by refusing to open the judgment to consider whether Red Rooster had timely recorded the lis pendens.

After the close of evidence, the trial court directed the parties to file posttrial memoranda. In their memorandum, the defendants claimed for the first time that the lien was invalid because Red Rooster had not pleaded or offered any evidence at trial that it had filed a notice of lis pendens on the land records within one year of the filing of the mechanic's lien. In a written response to this claim, Red Rooster submitted a copy of the sheriff's return of the lis pendens that demonstrated that a notice of the lis pendens had been recorded and served on all of the defendants. The record also contained a copy of the lis pendens and sheriff's return. Red Rooster also argued, in response to the defendants' claim, that it had no obligation to plead and prove compliance with the filing requirement of § 49-39. The defendants did not assert in the trial court, nor have they asserted on appeal, that the sheriff's return is inaccurate or that a lis pendens had not been filed on the land records.

The trial court found that there was no evidence that Red Rooster had filed a lis pendens on the land rec-

ords within the one year period. The trial court stated that Red Rooster's "submission . . . does not constitute evidence of the filing" and that the plaintiff was obligated to establish compliance with § 49-39. Consequently, the trial court concluded that the lien was invalid and should be discharged. After the trial court had rendered judgment for the defendants, Red Rooster moved to open the judgment. In a hearing on that motion, Red Rooster again directed the trial court to the lis pendens and the sheriff's return in the record. The trial court, however, refused to open the judgment.

" 'A motion to open and vacate a judgment . . . is addressed to the [trial] court's discretion, and the action of the trial court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of its discretion. See *Manchester State Bank* v. *Reale,* 172 Conn. 520, 523–24, 375 A.2d 1009 (1979); *State* v. *Fahey,* 147 Conn. 13, 15, 156 A.2d 463 (1959). In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. *State* v. *Bitting,* 162 Conn. 1, 11, 291 A.2d 240 (1971); *E. M. Loew's Enterprises, Inc.* v. *Surabian,* 146 Conn. 608, 612, 153 A.2d 463 (1959). *Celanese Fiber, Division of Celanese of Canada, Ltd.* v. *Pic Yarns, Inc.,* [184 Conn. 461, 466–67, 440 A.2d 159 (1981)]. *Acheson* v. *White,* 195 Conn. 211, 214–15, 487 A.2d 197 (1985). *Yanow* v. *Teal Industries, Inc.,* 196 Conn. 579, 583, 494 A.2d 573 (1985). . . .' (Internal quotation marks omitted.)" *Walton* v. *New Hartford,* 223 Conn. 155, 169–70, 612 A.2d 1153 (1992). "Such discretion, however, imports something more than leeway in decision making and should be exercised in conformity with the spirit of the law and should not impede or defeat the ends of substantial justice." *Ducci Electrical Contractors, Inc.* v. *Department of Transportation,* 28 Conn. App. 175, 182, 611 A.2d 891 (1992).

Even if we were to agree with the trial court that Red Rooster had the obligation to plead and prove compliance with § 49-39; but see *Swerdloff* v. *AEG Design/Build, Inc.*, 209 Conn. 185, 187–89, 550 A.2d 306 (1988); *Northeast Electrical Contractors* v. *Udolf*, 1 Conn. App. 169, 171–72, 469 A.2d 419 (1984); we conclude that the trial court abused its discretion in refusing to open the judgment. Prior to the trial court's decision, but after the close of evidence, Red Rooster submitted a copy of the lis pendens and its sheriff's return that demonstrated that the lis pendens had been recorded on the land records. The defendants did not argue that the lis pendens was inaccurately or untimely recorded. In considering the defendants' claim that there was no evidence that a lis pendens had been recorded in accordance with § 49-39, the trial court could have compared Red Rooster's submission to the same documents contained in the trial court file.

Following the court's judgment for the defendants, Red Rooster, in its motion to open, again directed the trial court's attention to the court's file. Accordingly, the trial court could simply have referred to the file in order to determine the validity of the plaintiff's assertion. If the trial court were concerned with the accuracy of the documents in the file, then it could have asked the defendants whether they disputed the accuracy of the sheriff's return. Under these circumstances, the trial court did not exercise its discretion in conformity with the spirit of the law or the notion of substantial justice. We conclude, therefore, that the trial court abused its discretion in refusing to open the judgment to consider the plaintiff's evidence that the lis pendens had been filed in conformity with § 49-39. We further conclude, absent any claim to the contrary by the defendants, that Red Rooster complied with § 49-39 in that regard.

## III

Red Rooster finally claims that the trial court improperly concluded that the mechanic's lien had not been sworn to by Red Rooster within the meaning of § 49-34. We disagree.

The following facts are relevant to this claim. Red Rooster's president, Jeremy Berkowitz, presented the certificate of mechanic's lien to a notary public to be notarized. He signed the certificate in the notary's presence and she then notarized the document. The notary did not administer an oral oath, nor did Berkowitz sign an oath. The notary's signature on the certificate appears under the following passage: "On this . . . day . . . before me, Jeremy Berkowitz, president of Red Rooster Construction Company, Inc., personally appeared, and made solemn oath that the facts stated herein are true . . . . IN WITNESS WHEREOF, I hereto set my hand and seal this . . . day . . . ." Berkowitz' signature does not follow any passage stating that it was his solemn oath that the facts stated in the certificate were true. His signature merely appears at the end of the body of the certificate stating the facts allegedly entitling him to a mechanic's lien.

Section 49-34 provides that a mechanic's lien is invalid unless the certificate of the lien filed on the land records is "subscribed and sworn to by the claimant." " '[A] requirement that a document be "sworn to" contemplates the execution of an affidavit that the facts contained in it are true.' " *J. C. Penney Properties, Inc.* v. *Peter M. Santella Co.,* 210 Conn. 511, 513–14, 555 A.2d 990 (1989). "An oath . . . signifies the undertaking of an obligation 'to speak the truth at a time [that] may deeply affect the rights and the character of individuals.' " *State* v. *Grant,* 176 Conn. 17, 24, 404 A.2d 873 (1978). Consequently, we have held that the

mechanic's lien statute requires the performance or execution of an oath swearing that the facts contained in the document are true. *J. C. Penney Properties, Inc.* v. *Peter M. Santella Co.,* supra.

General Statutes § 1-22 entitled "Ceremony," provides: "The ceremony to be used, by persons to whom an oath is administered, shall be the holding up of the right hand; but when any person, by reason of scruples of conscience, objects to such ceremony or when the court or authority by whom the oath is to be administered has reason to believe that any other ceremony will be more binding upon the conscience of the witness, such court or authority *may permit or require any other ceremony to be used."* (Emphasis added.) We previously have noted the statutory requirement of a ceremony to effectuate a valid oath: "An oath . . . is a solemn and formal declaration that the contents of a declaration, written or oral, are true, and it *must be administered in accordance with the ceremony and procedures* set forth in [§ 1-22]." (Emphasis added.) *State* v. *Assuntino,* 180 Conn. 345, 354, 429 A.2d 900 (1980). Section 1-22 requires, therefore, that some ceremony be conducted if an oath is obligated by statute or other law.

Although the term "ceremony" is not defined by statute, it is clear that some formality is essential. "[T]o make a valid oath, there must be, in some form, an unequivocal and present act by which the affiant consciously takes upon him or herself the obligation of an oath. . . . Stated otherwise, in order to have a valid statement under oath, the attention of the person to be sworn must be called to the fact that his or her statement is not a mere asseveration, but must be sworn to, and he or she must do some corporal act in recognition of this." 58 Am. Jur. 2d 1056, Oath and Affirmation § 18 (1989), and cases cited therein.

Red Rooster argues that merely signing the certificate of lien that contained a statement signed by the *notary* that the claimant appeared and made solemn oath that the facts stated in the certificate were true was sufficient to comply with the oath requirement. We are unpersuaded.

We first note that we need not decide in this case whether the signing of a written statement by the actual claimant swearing that the facts in the document are true, without more, constitutes a sufficient ceremony for an oath. In the present case, Red Rooster's president did not sign an oath that the facts contained in the certificate were true. Indeed, the notary was the only individual to sign a statement that even contained language approximating an oath. Moreover, her signed statement asserted only that Berkowitz had sworn that the facts contained in the certificate were true, an assertion that she later testified at trial was untrue.

To validate a mechanic's lien certificate without any evidence that the claimant performed some act or form of ceremony indicating that the claimant consciously undertook the obligation of an oath "would invite confusion, delay and uncertainty into an area where certainty and complete compliance with the statutory requirements are of paramount importance to interested parties and the general public." *J. C. Penney Properties, Inc.* v. *Peter M. Santella Co.,* supra, 518. In light of the fact that (1) an oral oath was not administered, (2) Red Rooster's president did not sign a statement swearing to the truth of the facts contained in the certificate, and (3) § 1-22 requires that some ceremony be performed in making an oath, the trial court properly concluded that the certificate was not "sworn to."[11] The lien is therefore invalid.

[11] The plaintiff has cited cases from other jurisdictions that he argues support upholding the lien in this case. See *People* v. *Walker,* 347 Cal. App.

2d 554, 55 Cal. Rptr. 726, cert. denied, 389 U.S. 824, 88 S. Ct. 60, 19 L. Ed. 2d 77 (1967); *HCI Corporation* v. *Voikos Construction Co.,* 581 A.2d 795 (Me. 1990); *Blackburn* v. *Motor Vehicles Division,* 576 P.2d 1267 (Or. App. 1978); *State* v. *Lewis,* 85 Wash. 2d 769, 539 P.2d 677 (1975). These decisions, however, are both factually and legally inapposite to the present case. None of the cases cites an applicable statute that requires, as in our state, some form of ceremony to be performed to effectuate a valid oath. Furthermore, in each case the party signed the document below a written statement that the document was under oath or that the party "swore to" the truth of the facts contained; see *Blackburn* v. *Motor Vehicles Division,* supra, 1270; *State* v. *Lewis,* supra, 771; an oral oath was actually administered; *HCI Corporation* v. *Voikos Construction Co.,* supra, 797–98; or there was direct evidence by both the party and the notary that the party understood that he was under oath, and that the notary reminded the party that he was regarded as being under oath. *People* v. *Walker,* supra, 557. In the present case, the record is devoid of such facts.