[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANT PEOPLE'S BANK'S MOTION FOR SUMMARYJUDGMENT (DOCKET ENTRY NO. 121)
ISSUE
Should the defendant's motion for summary judgment be granted on the ground that there is no genuine issue of material fact that the defendant was a mortgagee not in possession of the property, and therefore, the defendant is entitled to judgment as a matter of law because it owed no legal duty to the plaintiffs regarding the existence of lead paint on the premises?
PROCEDURAL HISTORY
On May 5, 1995, the plaintiffs, Jamia E. Craig, through her mother and next friend, Mary Gore, and Mary Gore, filed a second revised eighteen count complaint against the defendants, Donna Mohyde, Charles W. Mohyde, Jr., and People's Bank (People's). According to the facts alleged in the complaint, the defendants Donna and Charles Mohyde own and maintain a dwelling unit located on Myrtle Avenue in Bridgeport, Connecticut. The defendant People's is a Connecticut corporation which allegedly operates, controls and maintains the subject premises or has rights to do so.[1]
The plaintiffs resided as tenants in the subject dwelling from February, 1991, to September, 1993. During the period that Jamia E. Craig (Craig) occupied the dwelling, the interior and exterior of the dwelling was allegedly covered with lead-based paint, some or all of which was cracked and peeling. As a result of the minor plaintiff's ingestion and inhalation of the paint, she has suffered and will continue to suffer physical injury and emotional distress. In addition, Mary Gore has incurred and will continue to incur medical expenses for treatment of Craig's CT Page 3961 injury.
Counts one through eight are directed against Donna Mohyde and Charles W. Mohyde, Jr., and are not at issue. Counts nine through eighteen are directed against the defendant People's Bank. Count nine alleges that Craig's injuries were caused by the defendant's violation of General Statutes §§ 47a-7, 47a-53,47a-54f, 19a-111, 19a-111a through 19a-111d, and 21-82 through21-85; the Housing and Commercial Code of the City of Bridgeport § 101-15(i); Chapter 63 of the Social Security Act, 42 U.S.C. § 4801
through 4846; 16 C.F.R. § 1303; 24 C.F.R. § 35, 882, 886; and24 C.F.R. § 200.800 through 200.830.
Count ten alleges that as a result of People's violation of the foregoing statutes and regulations, Mary Gore has incurred and will continue to incur educational and medical expenses for Craig's treatment.
Count eleven alleges that People's was negligent in that it rented the dwelling to the plaintiffs when they knew or should have known of the presence of lead paint; failed to inspect the dwelling for lead paint; failed to remove the lead paint when it knew or should have known of its presence; failed to reduce the hazard to Craig by cleaning or repainting the dwelling; failed to warn the plaintiffs of the presence of the lead paint; and violated the foregoing statutes, regulations and ordinances.
Count twelve alleges that as a result of People's negligence, Mary Gore has incurred and will continue to incur medical and educational expenses for Craig's treatment.
Count thirteen alleges that People's violated General Statutes § 42-110a, the Connecticut Unfair Trade Practices Act. Specifically, the plaintiffs allege that People's knew or should have known that the Mohydes entered into a rental agreement with Mary Gore and that People's accepted mortgage payments from the Mohydes when it knew or should have known of the presence of lead paint and that the dwelling was unfit for human habitation. In addition, the plaintiffs allege that People's failed to inspect the premises for lead paint; failed to remove or reduce the hazard; failed to warn the plaintiffs of the presence of lead paint; and violated the foregoing statutes, ordinances and regulations. CT Page 3962
Count fourteen alleges that as a result of People's violation of § 42-110a, Mary Gore has incurred and will continue to incur medical and educational expenses for Craig's treatment.
Count fifteen alleges nuisance. The plaintiffs allege that throughout the time in which the plaintiffs operated the premises, People's possessed, controlled or maintained, or had rights which would have allowed it to possess, control or maintain the premises. The plaintiffs allege that the presence of the cracked and peeling paint created a danger to the plaintiffs and was the proximate cause of their injuries.
Count sixteen alleges that as a result of the nuisance created by People's, Mary Gore has incurred and will continue to incur medical and education expenses for the treatment of Craig.
Count seventeen alleges that People's violated General Statutes § 47a-8, causing injury to Craig.
Count eighteen alleges that as a result of People's violation of General Statutes § 47a-8, Mary Gore has incurred damages.
On December 14, 1995, People's filed a motion for summary judgment as to all counts of the complaint directed against it. People's filed a memorandum of law and various documents in support of its motion. The plaintiffs have not filed a response.
DISCUSSION
"The standard of review of a trial court's decision to grant a motion for summary judgment is well established." HomeInsurance Co. v. Aetna Life Casualty Co., 235 Conn. 185, 202,663 A.2d 1001 (1995). Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 384. "`In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue.'" Home Insurance Co.v. Aetna Life Casualty Co., supra, 202, quoting Water WayCT Page 3963Properties v. Colt's Manufacturing Co., 230 Conn. 660, 664,646 A.2d 143 (1994).
In ruling on a summary judgment motion the court is "obligated to accept as true all well pleaded facts and the plaintiff's evidence offered in opposition to the defendant's motion, and to determine whether the plaintiff's claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right to recovery." Suarezv. Dickmont Plastics Corp., 229 Conn. 99, 110, 639 A.2d 507
(1994).
All of People's arguments in support of summary judgment rely on the factual predicate that People's is not a mortgagee in possession. The affidavit of the risk manager of People's, Jennifer Whittendale, states that in 1986 Charles Mohyde executed a mortgage on the premises in favor of People's and in 1992 Donna Mohyde became an additional mortgagor. (Memorandum of Law in Support of Defendant People's Bank's Motion for Summary Judgment, 12/14/95, Exhibit A: Affidavit of Jennifer Whittendale, Risk Manager for People's Bank, 11/17/95, paras. 5, 6.) Whittendale also avers that People's never exercised its right under the mortgage to take possession of the subject property. (Affidavit, para. 8.)
"Where a party opposing a motion for summary judgment does not respond to the affidavit of the movant, the court is entitled to rely on the facts stated in the affidavit of the movant."Green v. East Hartford, Superior Court, judicial district of Hartford at Hartford, Docket No. 345626 (December 21, 1989, Purtill, J., 1 Conn. L. Rptr. 123), citing Bartha v. WaterburyHouse Wrecking Co., 190 Conn. 8, 11-121, 459 A.2d 115 (1983). Accordingly, People's has met its burden of proving that there is no genuine issue of material fact that it has never been a mortgagee in possession of the premises.
People's also has the burden of proving, however, that the absence of any genuine issue of material fact on its status as a mortgagee not in possession entitles it to judgment under applicable principles of substantive law. Cirillo v. Sardo,41 Conn. App. 664, ___ A.2d ___ (1996).
1. Motion for Summary Judgment on Counts Nine and Ten.
People's moves for summary judgment on counts nine and ten on CT Page 3964 the ground that none of the statutes forming the basis of the plaintiffs' causes of action in these counts imposes a legal duty upon People's. Accordingly, People's argues that it is entitled to summary judgment.
Count nine, and count ten by incorporation, allege that People's violated various state statutes, the federal Lead-Based Paint Poisoning Prevention Act and regulations enacted pursuant thereto, and provisions of the Housing Code of the City of Bridgeport.
a. General Statutes § 47a-7.
The plaintiffs contend that People's violated General Statutes § 47a.7. Section 47a-7, entitled "Landlord's Responsibilities", is part of the Landlord Tenant Act. People's argues that it does not fall within the statutory definition of landlord under General Statutes § 47a-1 (d) and therefore it may not be held liable for violation § 47a-7.[2]
Under the Act, a "landlord" is defined as "the owner, lessor or sublessor of the dwelling unit, the building of which it is a part or the premises." General Statutes § 47a-1 (d). An "owner" is defined as "one or more persons, jointly or severally, in whom is vested (a) all or part of the legal title to property or (2) all or part of the beneficial ownership and a right to present use and enjoyment of the premises and includes a mortgagee in possession." General Statutes § 47a-1 (e).
The first issue is whether People's falls within the statutory definition of "owner." Under § 47a-1 (e)(1), an owner is one in whom is vested legal title to property. In this regard, it is noteworthy that Connecticut follows the title theory of mortgages. Red Rooster Construction Co. v. River Associates,Inc., 224 Conn. 563, 569, 620 A.2d 118 (1993) (construing the term "owner" under General Statutes § 49-34, regarding mechanic's liens); Conference Center Ltd. v. TRC, 189 Conn. 212, 218,455 A.2d 857 (1983) (holding that "[i]t is undisputed that a mortgagee in Connecticut, both by common-law rule and by statute, is deemed to have taken legal title upon the execution of a mortgage on real property."); Barclays Bank of New York v. Ivler,20 Conn. App. 163, 166, 565 A.2d 252 (1989), cert. denied, 213 Conn. 809,568 A.2d 792 91989) (holding that "[i]n Connecticut, a mortgagee has legal title to the mortgaged property and the mortgagor has equitable title, also called the equity of redemption.").[3]
CT Page 3965
The court in Red Rooster recognized, however, that "the law of mortgages is built primarily on a series of legal fictions" and stated that despite Connecticut's adherence to the title theory of mortgages, "`in substance and effect . . . the mortgage is regarded as mere security . . . and the mortgagor is for most purposes regarded as the sole owner of the land. . . .'" Red RoosterConstruction Co. v. River Associates, Inc., supra, 224 Conn. 569, quoting McKelvey Creevey, 72 Conn. 464, 466-67, 45 A. 4 (1900). The court stated that [t]he mortgagee `has title and ownership enough to make his security available, but for substantially all other purposes he is not regarded as owner, but the mortgagor is so regarded, always subject of course to the mortgage.'" Id., quoting McKelvey v. Creeney, supra, 468; see also Burke v. ZoningBoard of Appeals, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 300221 (April 19, 1993, Fuller, J.,8 CSCR 482) (holding that a holder of a fourth mortgage does not have a sufficient ownership interest in property to be aggrieved under General Statutes § 8-8 although a mortgagee technically has legal title to property.) Although Red Rooster involved a determination of whether a mortgagee is an owner for purposes of the mechanic's lien notice requirements under General Statutes § -49-34, the decision is nonetheless persuasive in the present case.
In addition, § 47a-1 (e) requires the legal title to be "vested" in the owner. General Statutes § 47a-(e). "In the construction of statutes, words and phrases shall be construed according to the commonly approved usage of the language. . . ." General Statutes § 1-1(a); Warner v. Leslie-Elliot Constructors,Inc., 194 Conn. 129, 137, 479 A.2d 231 (1984). Vested is defined as "[f]ixed; accrued; settled; absolute. Having the character or given the rights of absolute ownership; not contingent; not subject to be defeated by a condition precedent." Black's Law Dictionary (5th Ed. 1989). Under the title theory of mortgages, the legal title in the mortgagee is not absolute. The equity of redemption gives the mortgagor a right to redeem legal title upon full performance of conditions specified in the mortgage.Barclays Bank of New York v. Ivler, supra, 20 Conn. App. 166. The foreclosure becomes absolute only after the law day, which cuts off the right to redeem. Id. Thus, it appears that the legal title held by the mortgagee is not "vested," as that term is commonly defined. Therefore, a mortgagee not in possession is not an "owner" within the meaning of § 47a-1 (e)(1). CT Page 3966
General Statutes § 47a-1 (e) also defines an "owner" as one in whom is vested all or part of the beneficial ownership and a right to present use and enjoyment of the premises and includes a mortgagee in possession. General Statutes § 47a-1 (e)(2). A beneficial owner is defined as "[o]ne who does not have title to property but has rights in the property which are the normal incident of owning the property" and as one who is an "[e]quitable as contrasted with legal owner." Black's Law Dictionary (5th Ed. 1989). People's did not have a right to present use of the premises and therefore did not have the present possessory right incident to ownership of property. Accordingly, People's was not a beneficial owner of the property under § 47a-1 (e)(2).
As previously noted, General Statutes § 47a-1 (e)(2) includes under the definition of "owner" a mortgagee in possession.[4]
"[T]he plain meaning, if not definition, of the term `including' is that what follows the term is meant to be representative. . . ." (Internal quotation marks omitted.) Statev. DeFrancesco, 235 Conn. 426, 440, 668 A.2d 348 (1995). Thus, the inclusion of a mortgagee in possession in the definition of "owner" provides an example of a person having beneficial ownership in the property. Moreover, "it is a basic tenet of statutory construction that no part of a legislative enactment is to be treated as insignificant or unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase . . . and no word in a statute is to be treated as superfluous." (Internal quotation marks omitted.) Id., 437. The inclusion of a mortgagee in possession would be superfluous if a mortgagee not in possession were also intended to be included in § 47a-1(e).
On the basis of the foregoing, People's Bank is not a "landlord" under the Landlord Tenant Act. Therefore, General Statutes § 47a-7 does not impose a legal duty upon People's.
b. General Statutes § 47a-53.
The plaintiffs argue that People's violated General Statutes § 47a-53. Section 47a-53 states that whenever the board of health or other enforcing agency determines that a building is dangerous or detrimental to life or health because of, inter alia, its paint, the board may declare the building a public nuisance. The statute permits the board to order the owner to abate the nuisance or, in the absence of compliance with the order, to execute the order. The board may then collect the expense of compliance from CT Page 3967 the "owner" of the property.[5]
Section 47a-53 is part of chapter 833a regarding public enforcement of health and safety standards in tenement and boarding houses and in rented dwellings. The term "owner" is not defined. Statutory definitions of words used elsewhere in the same statute, however, "furnish official and authoritative evidence of legislative intent and meaning and are usually given controlling effect." 1 A.C. Sands, Sutherland Statutory Construction (4th Ed. 1972) § 27.02 p. 310. As noted previously, People's does not fall within the definition of owner under47a-1(e). Furthermore, several early Connecticut cases support the proposition that a mortgagee not in possession of property is not an owner thereof, irrespective of any statutory scheme. SeeDesiderio v. Iadonisi, 115 Conn. 652, 654, 163 A. 254 (1932) (stating that in Connecticut "a mortgagor is regarded as owner of the land."); McKelvey v. Creevey, 72 Conn. 464, 466-67, 45 A. 4
(1900) (stating that "the mortgage is regarded as mere security for the performance of the duty described in the mortgage deed; and the mortgagor is for most purposes regarded as the sole owner of the land. . . .") Accordingly, People's cannot be held liable for violation of General Statutes § 47a-53 since it was not an owner of the property within the meaning of the statute.
c. General Statutes § 47a-54f.
The plaintiffs argue that People's violated General Statutes § 47a-54f, which states that "[p]aint on the accessible surfaces of a tenement house shall not be cracked, chipped, blistered, flaking, loose, or peeling so as to constitute a health hazard." The same analysis applies to this statutory section as to those previously discussed. Furthermore, the court in Gore v.People's Savings Bank, 235 Conn. 360, 665 A.2d 1341 (1995), discussed liability under 47a-54f and held that the statute does not impose strict liability on landlords for tenants' exposure to lead based paint.[6] (Emphasis added.) Id., 383. As noted earlier, People's is not a landlord under the provisions of the Landlord Tenant Act. Accordingly, People's cannot be held liable for violation of General Statutes § 47a-54f.
d. General Statutes § 19a-111.
The plaintiffs allege that People's violated General Statutes § 19a-111, which is part of Chapter 368a, entitled Department of Public Health and Addiction Services. The statute requires the CT Page 3968 director of health, upon receipt of reports confirming high blood count levels of lead, to investigate the source of the lead and to order the persons responsible for the condition to prevent further exposure. General Statutes § 19a-111 imposes no legal duty on People's. Accordingly, People's cannot be held liable for violation of § 19a-111.
e. General Statutes §§ 19a-111a — 19a-111d.
General Statutes §§ 19a-111a through 19a-111d establish the Connecticut Lead Poisoning Prevention Program. Sections 19a-111a,19a-111b and 19a-111d relate to the Commissioner of Public Health's duties in establishing the program. Section 19a-111c
states that "[t]he owner of any dwelling in which the paint, plaster or other materials contain toxic levels of lead and in which children under the age of six reside, shall abate or manage such dangerous materials consistent with regulations adopted pursuant to this section. . . ."
As noted by People's, pursuant to statutory authority, the Commissioner of Public Health adopted such regulations. Section19a-111-1(gg) of the Regulations of Connecticut State Agencies states that "[n]o holder of an easement, mortgagee, bank or lender holding the mortgage shall be considered an owner except when the holder of an easement, mortgage, banker or lender takes physical possession of the property." Regs., Conn. State Agencies § 19a-111-1(gg).
"An administrative agency's regulations are presumed valid and, unless they are shown to be inconsistent with the authorizing statute, they have the force and effect of a statute."Traveller's Insurance Co. v. Kulla, 216 Conn. 390, 399,579 A.2d 525 (1990); Acro Technology, Inc. v. Administrator,25 Conn. App. 130, 135, 593 A.2d 154 (1991) (stating that "[v]alid agency regulations have the force of statutes and constitute state law.").
The Regulations impose no legal duty on People's. Therefore, People's cannot be liable for violation of the Lead Poisoning Prevention Program, General Statutes §§ 19a-111a through 19a-111d.
f. General Statutes §§ 21a-82 through 21a-85.
The plaintiffs claim that People's violated General Statutes §§ 21a-82 through 21a-85. Section 21a-82 provides that no person, CT Page 3969 firm, corporation or public authority shall use any paint on an interior surface of any tenement house or building which does not conform to the standards of the Federal Lead-based Poisoning Prevention Act, Chapter 63 of the Social Security Act. General Statutes § 21a-83 states that "no person, firm or corporation shall package, distribute, offer for sale, sell or give away" any paint which does not conform to federal regulations unless it bears a specified warning statement. General Statutes § 21a-84
permits the commissioner of consumer protection to seize paint which is in violation of § 21a-83. General Statutes § 21a-85
proscribes a $500 penalty for the violation of §§ 21a-82 and21a-83.
The affidavit of People's risk manager avers that "at no time did People's paint the interior or exterior surfaces of the premises located at 282-283-286 Myrtle Avenue, Bridgeport, Connecticut . . . at no time did People's package or sell any paint subject to the Federal Lead Based Paint Poisoning Prevention Act . . . at no time did People's Bank manufacture, produce or distribute lead-based paint." (Defendant People's Motion for Summary Judgment, 12/14/95, Exhibit A: Affidavit of Jennifer Whittendale, Risk Manager for People's Bank, 11/17/95, paras. 10, 11, 15).
"When a motion for summary judgment is supported by affidavits and other documents, an adverse party, by affidavit or otherwise provided by [Practice Book § 380], must set forth specific facts showing that there is a genuine issue for trial, and if he does not so respond, the court is entitled to rely upon facts stated in the affidavit of the movant." Bartha v. WaterburyHouse Wrecking Co., 190 Conn. 8, 11-12, 459 A.2d 115 (1983).
As noted earlier, the plaintiffs did not submit a memorandum in opposition to the motion for summary judgment or any affidavits or other documentation to refute the facts attested to by Whittendale. Accordingly, the court may rely on the facts averred in the Whittendale affidavit. Therefore, People's is not liable for violations of §§ 21a-82 through 21a-85.
 g. Housing and Commercial Code of the City of Bridgeport § 101-15(i).
The plaintiffs allege that People's violated § 101-15(i) of the Housing and Commercial Code of the City of Bridgeport. The relevant code section is not appended to the complaint or the CT Page 3970 memorandum in support of the motion for summary judgment. General States § 52-163 permits a court to take judicial notice of the ordinances of any town, city or borough.[7] Housing Authority v.Brown, 23 Conn. App. 366, 369, 579 A.2d 1110 (1990). The court inBrown, however, held that municipal housing regulations were not subject to judicial notice under § 52-163. Id., 369; see alsoFernandes v. Zoning Board of Appeals, 24 Conn. App. 49, 55,585 A.2d 703 (1991) (declining, on the authority of Brown, to take judicial notice of a city's zoning regulations "when they are not made part of the record or when only a small portion is presented.").
In Brown, the plaintiff housing authority appealed the trial court's dismissal of its summary process action for lack of subject matter jurisdiction on the ground that the court improperly took judicial notice of the housing authority's grievance procedure. Housing Authority v. Brown, supra,23 Conn. App. 368. The plaintiff claimed that "the court should not have taken judicial notice of a grievance procedure not introduced in evidence or incorporated into a pleading, or mentioned by the plaintiff at a hearing held on the court's own motion to dismiss for lack of subject matter jurisdiction." Id., 368.
The Appellate Court reversed the judgment of the trial court, finding that the rules and procedures of a local housing authority "are not fully published or disseminated" and that "there is no official publication or repository in which they are recorded." Id., 369-70. The court held that "[i]n the absence of such procedures and controls, the court has no assurances that the proffered regulation reflects the most current and complete version available." Id., 369. The court found persuasive the fact that "[t]he plaintiff had no opportunity to refute, deny or even review the court's usage of and reliance upon those regulations used by the court in its determination that it lacked subject matter jurisdiction." Id., 370.
In the present case, the plaintiffs have alleged a violation of § 101-15(i) of the housing code and they have had an opportunity to refute the defendant's motion for summary judgment thereon. People's has set forth the provisions of the code in its memorandum in support of the motion for summary judgment. Moreover, the City of Bridgeport has codified and published its General Ordinances in a municipal Code which is available to the public.[8] On these bases, Brown is distinguishable from the present case. The court may take judicial notice of § 101-15(i).[9]
CT Page 3971
Section 15.12.150.H and I impose duties on persons who occupy or lease for occupancy dwelling units contaminated with lead-based paint. As discussed previously in this memorandum, People's neither occupied nor leased the subject premises to the plaintiffs. (Memorandum of Law in Support of Defendant People's Bank's Motion for Summary Judgment, 12/14/95, Exhibit A: Affidavit of Jennifer Whittendale, 11/17/95, para. 13). People's is not within the purview of these sections of the Bridgeport Municipal Code and therefore cannot be held liable thereunder.
 h. Lead-Based Paint Poisoning Prevention Act, 42 U.S.C. § 4822.
The plaintiffs allege that People's Bank violated the Lead-Based Paint Poisoning Prevention Act (the Act), 42 U.S.C. § 4822, and the federal regulations identified in count one. People's argues that these enactments do not provide a private cause of action for money damages.
The Act states, in relevant part, that "[t]he Secretary of Housing and Urban Development . . . shall establish procedures to eliminate as far as practicable the hazards of lead based paint poisoning with respect to any existing housing which may present such hazards and which is covered by an application for mortgage insurance or housing assistance payments under a program administered by the Secretary."
Whether or not the subject premises was covered by an application for mortgage insurance or housing assistance payments under a program administered by the Secretary of Housing and Urban Development, the Act does not provide the plaintiffs with a private right of action. Roseberry v. United States, 736 F. Sup. 408
(D.N.H. 1990).
In Roseberry, the plaintiffs' infant children suffered injuries from the ingestion of lead paint existing in a home purchased by the plaintiffs from the Veterans Administration. Id., 409. In response to the plaintiffs' argument that the Act provides them with an implied private right of action, the court stated that the Act "does not give plaintiffs an independent basis to assert a cause of action for money damages." Id., 410. The court stated that the Act "is a legislative directive to the Secretary of Housing and Urban Development (HUD) to establish and implement procedures" addressing health hazards to children CT Page 3972 occasioned by the presence of lead paint in older housing units. Id. "It is purely an administrative authority-granting statute." Id. Accordingly, the plaintiffs may not maintain a private cause of action under the Act for money damages against People's.[10]
On the basis of the foregoing, People's motion for summary judgment on counts nine and ten are granted.
2. Motion for Summary Judgment on Counts Eleven and Twelve.
In counts eleven and twelve, the plaintiffs allege that People's was negligent and that they violated the statutes and federal regulations previously identified in this memorandum. People's asserts that counts eleven and twelve are based on a theory of premises liability and that the duty giving rise to liability under this theory depends upon who has possession and control of the premises. People's contends that it is entitled to judgment as a matter of law because it was a mortgagee not in possession of the premises and, therefore, it owed no legal duty to the plaintiffs. People's also notes that the plaintiffs base their negligence claim on the violation of the state and federal statutes alleged in counts nine and ten. People's advances the same argument, namely that a defendant charged with negligence for violation of a statute must owe a legal duty under the statute and that there was no such duty owing to the plaintiffs under the statutes cited.
The court need not address whether the plaintiffs allege a premises liability claim in counts eleven and twelve. In interpreting the facts alleged in the complaint in the light most favorable to the plaintiff, the complaint simply alleges a cause of action in negligence. Ficarra v. Connecticut DisposalServices, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 31 77 63 (June 2, 1995, Hauser, J.).
"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." R.K. Constructors, Inc. v. Fusco Corp.,231 Conn. 381, 384, 650 A.2d 153 (1994). "Negligence is a breach of duty." (Internal quotation marks omitted.) Petriello v. Kalman,215 Conn. 377, 382 A.2d 377 (1990). "The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand . . . [i]f a court determines, as a matter of law, that a defendant owes no duty to CT Page 3973 a plaintiff, the plaintiff cannot recover in negligence from the defendant." (Citations omitted; internal quotation marks omitted.) Id., 384-85.
No Connecticut cases have been located which demonstrate the existence of a duty of care owed by a mortgagee not in possession of property to the tenants thereof. It is established, however, that control is a vital issue in negligence cases because liability can be predicated thereon. Mack v. Clinch,166 Conn. 295, 296, 348 A.2d 669 (1974) (stating that the issue of control was important in the trial of that case "since liability can be predicated upon negligence in the control and possession of premises, as opposed to mere ownership thereof."). People's has met its burden of establishing that it was not in control of the property, despite the plaintiffs' allegations to the contrary. Accordingly, People's did not owe a duty to the plaintiffs, and it cannot be held liable in negligence. On this basis, People's is entitled to judgment as a matter of law on counts eleven and twelve.
3. Motion for Summary Judgment on Counts Thirteen and Fourteen.
People's asserts that it is entitled to summary judgment on counts thirteen and fourteen on the ground that General Statutes § 42-110, the Connecticut Unfair Trade Practices Act (CUTPA), requires a consumer relationship between the plaintiffs and People's. People's maintains that the plaintiffs' alleged injuries did not arise out of any relationship the plaintiffs had with People's, but arises out of their status as tenants of the premises owned and leased by the Mohydes.
The operative provision of CUTPA, § 42-110b(a), states merely that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Trade or commerce, in turn, is broadly defined as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real or personal or mixed, and any other article, commodity, or thing of value in this state." General Statutes § 42-110a(4). The defendant People's activities within the context of this case do not fall within the said definition of "trade or commerce." Further, there is insufficient nexus between the plaintiff and the defendant, People's, to implicate the provision of CUTPA. Accordingly, People's is entitled to summary judgment on counts CT Page 3974 thirteen and fourteen.
4. Motion for Summary Judgment on Counts Fifteen and Sixteen.
People's argues that it cannot be held liable for damages in nuisance because it never possessed, maintained or controlled the subject premises.
"[T]o prevail on a claim of nuisance, a plaintiff must prove that: (1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; and (4) the existence of the nuisance was a proximate cause of the plaintiffs' injuries and damages." (Internal quotation marks omitted.) State v.Tippetts-Abbett-McCarthy-Stratton, 204 Conn. 177, 183,527 A.2d 688 (1987). "No Connecticut cases have addressed the specific issue of whether a mortgagee is insulated from liability for the maintenance of a nuisance on the mortgaged property." Lomanginov. LaChance Farms, Inc., 17 Conn. App. 436, 438, 553 A.2d 197 (1989).
Property ownership is not, however, a necessary prerequisite to nuisance liability. State v. Tippetts-Abbett-McCarthy-Stratton,
supra, 204 Conn. 184. Rather, courts have established a "functional test" to determine whether a defendant "uses" property in a manner sufficient to subject him to liability for nuisance. Id. "A critical factor in this test is whether the defendant exercises control over the property that is the source of nuisance." Id. In Tippetts, the court cited authority from other jurisdictions which have held that "liability for damage caused by a nuisance turns upon whether the defendant was in control, either through ownership or otherwise." (Internal quotation marks omitted.) Id., 185; see also HeritageVillage Master Assn., Inc. v. Heritage Village Water Co.,30 Conn. App. 693, 709, 622 A.2d 578 (1993) (stating that "[o]ur case law requires sufficient proof of a defendant's connection to a particular parcel of property and the nature of the defendant's use of his property, before nuisance liability can be imposed.").
In Lomangino, the plaintiffs brought a nuisance action against their former neighbor, the mortgagee of the neighbor's property and the subsequent purchaser of the property. Lomanginov. LaChance Farms, Inc., supra, 17 Conn. App. 437. The nuisance consisted of a pile of debris created by the development of the property for farmland, which debris was deposited near the plaintiff's boundary line. Id., 437. The facts of the case CT Page 3975 reveal that the neighbor defaulted on the mortgage and the mortgagee accepted a deed to the property in lieu of foreclosure. Id. Later, the mortgagee sold the property and took back a purchase money mortgage. Id.
The plaintiffs contended that genuine issues of fact existed as to whether the mortgagee controlled the property or was a substantial factor in maintaining the nuisance. Id., 439. They claimed that, through a series of mortgages to the neighbor and other mortgagors, the mortgagee financed and participated in the development of the land. Id., 437-38. They also claimed that the mortgagee's assumption of title for a seven week period prior to the sale of the property vested both possession and control in the mortgagee so as to render it liable for nuisance. Id., 438. In addition, the plaintiffs produced evidence that the mortgagee covenanted in the mortgage deeds not to allow waste; that the mortgagee acknowledged the plaintiffs' nuisance claim in the sales agreement with the subsequent purchaser; and that the mortgagee covenanted with the subsequent purchaser not to abate the condition without the mortgagee's consent. Id., 440. The mortgagee contended, nonetheless, that it was "strictly a lending institution that at no time maintained or controlled" the property. Id., 438.
The court held that the trial court erred in granting summary judgment in favor of the mortgagee, stating that the case was not "one in which the court should have summarily concluded that no genuine issue of fact existed as to whether the defendants ever `controlled,' `maintained' or `possessed' the . . . premises and whether any of the defendant's actions were a substantial factor in causing the alleged damages of the plaintiffs." Id., 441.
In Tippetts, the state sought damages for expenses it incurred as a result of the collapse and subsequent reconstruction of the Mianus River bridge on the Connecticut Turnpike. State v.Tippetts-Abbett-McCarthy-Stratton, supra, 204 Conn. 178. The defendants designed the bridge and supervised its construction. Id. At issue in the case was "the proprietary of the trial court's refusal to allow the jury to consider whether the defendants were liable to the plaintiff under theory of absolute public nuisance." Id. The court stated that although "the question of whether a defendant maintains control over property sufficient to subject him to nuisance liability normally is a jury question . . . there is nothing [in the pleadings or evidence] to suggest that the defendants ever assumed control of the subject CT Page 3976 property." (Citations omitted.) Id., 185. The court noted that at all relevant times the bridge was the exclusive property of the plaintiff. Id. Accordingly, the court held that the defendants did not exercise sufficient control over the bridge to render them subject to liability. Id., 187.
The courts' decisions in Lomangino and Tippetts were driven by evidence of the defendants' control over the property. Like the plaintiffs in Tippetts, the plaintiffs herein have presented no evidence to support a conclusion that People's was in control of the property occupied by the plaintiffs. While the issue of control, like the other elements of the tort of nuisance, is a question of fact for the jury, where there is no room for reasonable disagreement, the question is one to be determined by the court as a matter of law. Lomangino v. LaChance Farms, Inc.,
supra, 17 Conn. App. 440. On this basis, People's Bank is entitled to judgment as a matter of law on counts fifteen and sixteen.
5. Motion for Summary Judgment on Counts Seventeen and Eighteen.
In counts seventeen and eighteen, the plaintiffs allege that People's violated General Statutes § 47a-8.[11] Prior to its repeal in 1994, § 47a-8 provided: "Paint not conforming to standards renders property unfit. The presence of paint which does not conform to federal standards as required in accordance with the Lead-Based Paint poisoning Prevention Act, Chapter 63 of the Social Security Act, as amended, or of cracked, chipped, blistered, flaking, loose or peeling paint which constitutes a health hazard on accessible surfaces in any dwelling unit, tenement or any real property intended for human habitation shall be construed to render such dwelling unit, tenement or real property unfit for human habitation and shall constitute a noncompliance with subdivision (2) of subsection (a) of section47a-7."
In Gore v. People's Savings Bank, supra, 235 Conn. 360, the Supreme Court addressed whether a landlord of a residential dwelling may be held strictly liable pursuant to General Statutes §§ 47a-7, 47a-8, and 47a-54f(b) "for personal injuries sustained by a minor tenant due to the minor's exposure to lead-based paint in the landlord's dwelling." Id., 362-63. The court held that the language of § 47a-8 makes clear that the legislature intended that the "presence of paint in violation of the federal lead-based paint standards, or the health hazard standards of § 47a-54f(b)" CT Page 3977 would be a per se violation of § 47a-7.[12] Id., 381. The court stated that § 47a-8 "fixes, for the purposes of showing a violation of § 47a-, a specific standard regarding the use of lead-based paint and the condition of paint in dwellings." Id., 387 n. 20.
As noted previously in this memorandum, People's does not fall within the purview of the Landlord Tenant Act, and therefore, cannot be held liable for violation of § 47a-7. Accordingly, it cannot be held liable for violation of § 47a-8.
CONCLUSION
On the basis of the foregoing, People's Bank's Motion for Summary judgment is granted on all counts, nine through eighteen.
MORAN, J.