THE STATE OF CONNECTICUT *vs.* MINNIE E. HURLBURT
ET AL.

First Judicial District, Hartford, May Term, 1909.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, JS.

Chapter 238 of the Public Acts of 1907 prohibits everybody except a
national bank, a trust company chartered by this State, and a
pawnbroker, from charging or accepting interest on loans at a
greater rate than fifteen per cent per annum; but declares that
such prohibition shall not apply, among other things, to any bona
fide "mortgage" of real or personal property. *Held:*—

1. That the statute was not in violation of the constitutional principle,
declared in the Constitution of Connecticut, Art. I, § 1, that all
men possessed equal rights and none were entitled to exclusive
privileges from the community; nor was it a denial of the equal
protection of the laws guaranteed by the Fourteenth Amendment
to the Constitution of the United States.
2. That the General Assembly in regulating usury, had the right to
discriminate between different classes of money lenders and bor-
rowers, provided there was nothing apparently unreasonable in
creating such distinctions, and all the members of each class were
treated in the same manner.
3. That the word "mortgage" commonly signified a written convey-
ance given by way of security, containing a condition that it
should be void if the obligation secured by it were duly performed,
or accompanied by a written defeasance to that effect; and that
such was its import in the statute in question.
4. That a written assignment of future wages, given by way of security
and invalid upon its face because not acknowledged, was not a
"mortgage" within the meaning of that term as used in the stat-
ute.
Whether wages to be earned in the future can be regarded as "personal
property" within such a statute, *quære.*
The words of a statute are to be interpreted in their usual and natural
meaning, unless the context indicates that a different meaning is
intended.

Argued May 6th—decided June 8th, 1909.

INFORMATION for unlawfully charging interest on loans
made by the accused at a greater rate than fifteen per cent
per annum, brought to the Superior Court in Hartford

County where a demurrer was overruled and the cause was afterward tried to the jury before *Ralph Wheeler, J.;* verdict and judgment of guilty, and appeal by the accused. *No error.*

*A. Storrs Campbell,* for the appellants (the accused).

*Hugh M. Alcorn,* State's Attorney, for the appellee (the State).

BALDWIN, C. J.   By chapter 238 of the Public Acts of 1907, p. 838, no person or agent of any person, other than a national bank or a trust company chartered by this State, or a pawnbroker, "shall directly or indirectly loan money to any person and directly or indirectly charge, demand, accept, or make an agreement to receive therefor, interest at a greater rate than fifteen per centum per annum.  The provisions of this section shall not apply to loans made to any national bank or any bank or trust company duly incorporated under the laws of this state, or to any *bona fide* mortgage of real or personal property."  For any violation of this statute the offender is punishable by fine or imprisonment, or both.

The constitutionality of this enactment was challenged by the demurrer to the information.

The Constitution of Connecticut, Art. I, § 1, asserts in its Declaration of Rights, "That all men when they form a social compact, are equal in rights," and that "no man or set of men are entitled to exclusive . . . privileges from the community."

By the Fourteenth Amendment to the Constitution of the United States, no State can "deny to any person within its jurisdiction the equal protection of the laws."

None of these provisions affect the validity of the Act of 1907.

The exception from its operation of loans by national

banks was merely a recognition of the legal effect, in excluding State legislation on the same subject, of the statutes of the United States which regulate their right to make such contracts.

The further exception in favor of loans by trust companies chartered by this State, was fully justified by the peculiar character of these institutions,—each created by a special act of legislation, and subject to the inspection of the bank commissioners. General Statutes, Chapters 199, 202.

There was also reasonable cause for the exception as to pawnbrokers. Their business can only be carried on by those found by public authority to be suitable persons to engage in it, and its character is such as to make it not improper to allow a charge of interest beyond the limit of fifteen per cent a year. Public Acts of 1905, p. 438, Chap. 235.

There was also sufficient reason for restricting the statute so that it should not apply to loans made to any bank or to any trust company chartered by this State. Such institutions, managed by those accustomed to financial operations and familiar with the worth of money in the market from day to day, might well be deemed to require no statutory protection against being forced by their financial necessities to pay excessive interest for moneys borrowed.

Nor is the Act invalidated by the exception of mortgages. Publicity is one of the best safeguards against the making of unconscionable contracts. Under our recording system, it is rare that any bona fide mortgage, either of real or personal property, fails to be promptly spread upon the records of the town in which is situated the property which is its subject. So far as concerns chattel mortgages, also, our General Statutes (§§ 4132, 4134) had already made other and reasonable provision as to the rate of interest which might be charged or which, in case of foreclosure, could be allowed.

The General Assembly, in respect to the matter of usury, had the right to deal with different classes of money lenders

or money borrowers in a different way, provided there were nothing apparently unreasonable in creating such distinctions, and all the members of each class were treated in the same manner. *Heath & Milligan Co.* v. *Worst,* 207 U. S. 338, 354, 28 Sup. Ct. Rep. 114; *Home Telephone Co.* v. *Los Angeles,* 211 U. S. 265, 281, 29 Sup. Ct. Rep. 50. The enactment of the statute now in question fell within this right. *Norwich Gas & Electric Co.* v. *Norwich,* 76 Conn. 565, 573, 57 Atl. 746.

On the trial to the jury it appeared that, in connection with the transactions in question, the defendants received certain papers signed by one Walsh, to whom they were charged with lending money. One was entitled "application for sale of salary" and contained an "offer to sell you my salary" of $13 a week, "for a certain term, viz., 12 pts. of $1.25 ea." Another was an order directing his employer to pay his wages to the defendants. Another was a bill of sale and assignment of his "salary or compensation" for a term of three weeks, to commence at a future day. This was not acknowledged.

The State offered evidence that the defendants lent $10 to Walsh under an agreement to repay it in twelve weeks with $5 interest, in weekly payments of $1.25 each. The defendants offered evidence that both parties orally agreed that the sale or assignment should be void if $15 should be repaid on or before the beginning of the term therein mentioned. They then asked the court to instruct the jury that the bill of sale or assignment, together with the oral agreement, constituted in legal effect a mortgage of personal property. The charge given was to the contrary. If it were to be assumed that the subject of the assignment can be regarded as property (as to which see *Hawley* v. *Bristol,* 39 Conn. 26), the written paper, considered alone, was not a mortgage in form or name. *Morin* v. *Newbury,* 79 Conn. 338, 340, 65 Atl. 156. Nor did it, in connection with the oral agreement, constitute one within the meaning of the stat-

ute. The word "mortgage" is commonly understood to import a written conveyance given by way of security, containing a condition that it shall be void, if the obligation secured by it be duly performed, or accompanied by a written defeasance to that effect. It is this meaning which it carries, when used by the General Assembly, unless the context indicates a different purpose in its use. General Statutes, § 1. There is nothing in the statute now under consideration to show an intent to include a written assignment of future wages, by way of security, which by chapter 78 of the Acts of 1905 (p. 299) was invalid upon its face. On the contrary, to allow loans at a rate of interest exceeding fifteen per cent a year, where the lender disguises the true nature of the transaction by exacting an absolute conveyance, would frustrate the main object of the enactment, which was to protect borrowers from extortion.

There is no error.

In this opinion the other judges concurred.