THE ATLAS REALTY CORPORATION *vs.* HAROLD J. HOUSE.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, JS.

Argued December 4th, 1935—decided January 8th, 1936.

*Ralph O. Wells* and *William S. Locke,* for the appellant (defendant).

*I. Oscar Levine,* with whom, on the brief, was *Louis H. Katz,* for the appellee (plaintiff).

HINMAN, J. The action was brought by complaint in two counts on two joint and several notes given by the defendant and Alfred Mochau, payable to the order of the plaintiff. One note was alleged to be for $4375, the other for $1500, each with interest thereon and on unpaid balances at the rate of six per cent. per annum payable semi-annually, the principal payable in specified instalments, with provision for acceleration on default for thirty days whereby the entire unpaid amount should become payable forthwith at the option of the holder. Each also contained a notation that it was secured by mortgage on designated real estate. The complaint also alleged, as to each note, default of payment of an instalment of principal rendering due and payable the balance, alleged to be $1635 on the first note and $850 on the second, plus interest.

The defendant in his answer admitted the execution of the notes in the form alleged and, in effect, denied the remaining allegations. He also alleged, further,

as to the first note that the total amount actually loaned by the plaintiff to the makers was $3500 and that the plaintiff had been repaid all but $418.75 of that sum plus interest, and as to the second note that the amount loaned was $1200, of which all but $505 had been paid; that, with the knowledge of the plaintiff, the loans were made to the defendant and his partner Mochau to enable them to complete payment of the purchase price of two designated pieces of real estate and the cost of erecting houses thereon; that the first note was secured by a second mortgage on one piece, subject to a first mortgage of $6500, the present value of which property is in excess of $8000 and the balance due on the first mortgage $6400. Similar allegations were made as to the second note, the mortgage securing it being stated to be subject to a first mortgage for $5500, the balance unpaid thereon $5500, and the present value of the property $6500. As to each note, it is alleged, further, that in November, 1929, the defendant and Mochau conveyed the property to the Warwick Realty Company, that all payments of principal or interest have since been made by that company, which is the legal owner of the properties and has assumed and agreed to pay the notes; also that the plaintiff has made no claim against the defendant for payment of the notes otherwise than by instituting the present action and attaching his salary. It is also alleged as to each note that it was accepted by the plaintiff with intent to violate § 4732 of the General Statutes; that more than six years have elapsed since the making of the loan and the giving of the note; and that the plaintiff is estopped by its conduct to assert any claims thereon against the defendant.

The plaintiff demurred to the answer on several grounds including one, touching the allegations treated as amounting to a defense of usury, that "Section 4737

of the General Statutes provides that the usury statutes shall not apply to any bona fide mortgage of real property for a sum in excess of $500." The trial court sustained the demurrer on this ground, the parties stipulated as to the sums actually loaned by the plaintiff, being as alleged in the complaint, and the total amounts paid to and applied by the plaintiff on account of principal and interest, and judgment was rendered for the difference between the amounts of the notes and the payments applied on principal. The main and decisive assignments on this appeal pertain to the sustaining of the demurrer on the ground above quoted.

The relevant provisions of the "usury statutes" referred to in the demurrer are quoted in the footnote.

"Sec. 4732. LOANS AT GREATER RATE THAN TWELVE PER CENTUM PROHIBITED. No person and no firm or corporation or agent thereof, other than a pawnbroker as provided in section 2950, shall, as guarantor or otherwise, directly or indirectly, loan money to any person and, directly or indirectly, charge, demand, accept or make any agreement to receive, therefor, interest at a rate greater than twelve per centum per annum.

"Sec. 4733. NOTES NOT TO BE ACCEPTED FOR GREATER AMOUNTS THAN LOANED. No person and no firm or corporation, or agent thereof, shall, with intent to evade the provisions of section 4732, accept a note or notes for a greater amount than that actually loaned."

"Sec. 4736. ACTIONS NOT TO BE BROUGHT ON PROHIBITED LOANS. No action shall be brought to recover principal or interest, or any part thereof, on any loan prohibited by sections 4732, 4733 and 4734, or upon any cause arising from the negotiation of such loan.

"Sec. 4737. LOANS TO WHICH PRECEDING SECTIONS DO NOT APPLY. The provisions of sections 4732, 4733 and 4734 shall not affect any loan made prior to September 12, 1911, nor any loan made by any national bank or any bank or trust company duly incorporated under the laws of this state nor any bona fide mortgage of real property for a sum in excess of five hundred dollars. No provision of this section shall prevent any such bank or trust company from recovering by an action at law the amount of the principal and the interest stipulated or interest at the legal rate, if interest is not stipulated, in any negotiable instrument which it shall have acquired for value and in good faith without notice of illegality in the consideration."

These sections had their inception in Chapter 238 of the Public Acts of 1907; the presently material provisions of § 4732 appeared in § 1 of that act, the maximum rate of interest being there fixed at fifteen per cent., those of § 4733 as § 2, and of § 4736 as § 5. To § 1, also to § 3, concerning charges for expense of inquiry, negotiating and collecting (now § 4734), was added, "The provisions of this section shall not apply . . . to any bona fide mortgage of real or personal property." In 1911 this act was repealed and a substitute adopted (Public Acts, 1911, Chap. 244) wherein the maximum rate was reduced to twelve per cent., the above quoted provisions of §§ 1 and 3 of the 1907 act were omitted and a separate section (6), the same, in substance, as the present § 4737 of the General Statutes except that it contained no reference to mortgages of personal property, enacted.

A learned dissertation, in the appellant's brief, upon the history and philosophy of usury laws from Mosaic times to the present, while interesting and informing upon the general subject is not of material assistance in the solution of the immediate problem, which is as to the construction of the particular provision of § 4737 which excepts "any bona fide mortgage of real property for a sum in excess of five hundred dollars" from the operation of §§ 4732, 4733, and 4734. The reason impelling the General Assembly to make this exception is not apparent on the face of the statute and is not readily and definitely discernible by application of the recognized rules for statutory construction. A reason suggested in *State* v. *Hurlburt*, 82 Conn. 232, 234, 72 Atl. 1079, is that "Publicity is one of the best safeguards against the making of unconscionable contracts. Under our recording system, it is rare that any bona fide mortgage, either of real or personal property, fails to be promptly spread upon

the records of the town in which is situated the property which is its subject." This was held sufficient to save the exception of mortgages from invalidity as transgressing the constitutional guaranties of equal protection of the laws and against exclusive privileges. See also *Griffith* v. *Connecticut*, 218 U. S. 563, 570, 31 Sup. Ct. 132, 54 L. Ed. 1151, 83 Conn. 1, 74 Atl. 1068. In our opinion another and perhaps the principal motivating reason is to be found in the further safeguard against the objectionable and oppressive operation and effect of a usurious agreement which is afforded, in equity, when a mortgage embodying or securing such an agreement is sought to be enforced.

Where there are statutes against usury which include mortgages, a defense of usury, when proven, precludes foreclosure. "A usurious mortgage, which is declared to be void, can no more be enforced for the benefit of the mortgagee, upon his petition to foreclose, than the usurious debt for which the mortgage was given as security, can be collected, by means of a suit at law instituted for that purpose." *Camp* v. *Bates*, 11 Conn. 487, 502; *Cowles* v. *Woodruff*, 8 Conn. 35, 37. Where mortgages involving usurious interest are not declared to be void, it has been held that in foreclosure proceedings where it appears that the actual amount received by the mortgagor was less than that recited in the mortgage, the court may, when required by equitable considerations, reduce the amount to be paid to redeem from the stated sum to that which is equitably due and payable. *Abbe* v. *Newton*, 19 Conn. 20, 28; *Cowles* v. *Woodruff*, supra; *Trustees of Mutual Loan Asso.* v. *Tyre*, 26 Del. (3 Boyce) 88, 97, 81 Atl. 48; *In re Chicago Reed & Furniture Co.* (C.C.A.) 7 Fed. (2d) 885; *Dart* v. *McAdam*, 27 Barb. (N. Y.) 187; *Williams* v. *Thorn*, 11 Paige (N. Y.) 459, 465; *Rood* v. *Winslow* (Mich.) Walk. Ch. 340. In some

states the effect of usury is limited by statute to a forfeiture of the usurious interest or the incurrence of other penalties. 1 Wiltsie, Mortgage Foreclosure, § 151. Courts can afford redress in cases presenting circumstances of fraud, duress, unconscionable advantage taken of the borrower, or other recognized grounds of equitable relief. *Cohen* v. *Mansi,* 113 Conn. 91, 93, 154 Atl. 160. On equitable considerations and principles, foreclosure may be withheld if the mortgagor is prevented by accident, mistake, or fraud from fulfilling a condition of the mortgage. *Petterson* v. *Weinstock,* 106 Conn. 436, 442, 138 Atl. 433.

At the time when *Cowles* v. *Woodruff,* supra, was decided (1830) our usury statute declared "all bonds, contracts, mortgages and assurances" reserving a rate of interest above six per cent. "utterly void." General Statutes (Rev. 1824) p. 432, Title 108, § 1. The action was for foreclosure, and the defendants pleaded and offered evidence to prove usury. Objection to this evidence on the ground that its reception involved an inadmissible investigation of title was overruled on appeal, but the court held, further, page 38, that even "if the defendants might not prove that nothing was due, because the note and deed were void, they may prove, even upon the principles of those who deny their right to investigate title, that less is due upon the debt than is claimed. 'The actual state of things between the mortgagor and mortgagee in relation to the lien of the latter upon the land, must be brought into view, and ascertained from testimony in court.' *Baldwin* v. *Norton,* 2 Conn. 165. Usury, then, being pleaded, the defendant may certainly be permitted to shew, that a part of the note is for interest over and above the lawful interest; and a court of equity, under such circumstances, would say, that if the defendant

should pay all the money advanced and legal interest, he should not be foreclosed."

As recently as *Kruzansky* v. *Scombul* (1931) 113 Conn. 569, 155 Atl. 836, this principle was applied. This was an action to foreclose a mortgage of the face amount of $625, but the trial court, finding that the actual amount loaned to the defendant was only $480, and that the note and mortgage were taken with intent to evade § 4732 of the General Statutes, ordered judgment for $369, the amount of the actual loan remaining unpaid. The plaintiffs appealed, claiming that the court should have allowed the amount of the face of the note with interest and we found no error on that appeal, but held, on defendant's appeal, that as the mortgage was less than $500 (a conclusion reached by resort to the amount actually loaned to the defendant), it was not within the exception in § 4737 and no recovery could be had.

The discussion in *Cowles* v. *Woodruff* suggests another consideration which, by analogy, applies to situations graphically illustrated by facts in the present instance. In that case the suggestion was advanced by the plaintiffs that although the defendants be held not entitled to the benefit of the protection of the statute by being allowed to prove usury, in the foreclosure action, such benefit might be afforded when ejectment is brought for the land or an action is commenced on the note, or under a bill to redeem, brought by the defendants. As to these suggestions it was pointed out that if the plaintiffs were in possession and therefore could not bring ejectment, and if they did not sue on the note, the defendants could not have the full benefit, under a bill to redeem, of the statute then making a usurious mortgage entirely void, because "a court of chancery will not suffer a party to redeem, except upon payment of the money actually advanced." The

writer of the opinion remarked (p. 36), "A decent re-
spect for the Legislature would make me hesitate, be-
fore I adopted a construction which might lead to such
a result." Here, the result of the construction con-
tended for by the plaintiff and adopted by the trial
court, extending the exception of a mortgage also to
the note which it was given to secure, would be, and
was to enable the plaintiff by abstaining from bringing
an action for foreclosure of the mortgage, in which the
equitable principles we have mentioned could be
brought into play, and, instead, proceeding at law on
the note alone, "at [its] option, by a choice of reme-
dies," to deprive the defendant of benefit or protection
of the statute, however "hard, unconscionable or
griping [the] bargain" or the circumstances attending
such an election of remedies. *Cowles* v. *Woodruff*,
supra, p. 36.

Cases involving this statute which have come to this
court since its adoption have been actions for fore-
closure and are of no material assistance in solving
the present problem. *Cohen* v. *Mansi*, supra; *Kruzan-
sky* v. *Scombul*, supra. *State* v. *Hurlburt*, and *Griffith*
v. *Connecticut*, supra, were criminal prosecutions in
which the issue was the constitutionality of our usury
statutes. *M. Lowenstein & Sons, Inc.* v. *British-Amer-
ican Mfg. Co.* (C. C. A.) 7 Fed. (2d) 51, was a mort-
gage foreclosure suit and the opinion appears to assume
(p. 53) that notes (therein referred to as a "bond") as
well as the mortgage were within the exception of
§ 4803 of the General Statutes, 1918 (now § 4737), but
the present issue was not definitely involved and we
do not accept the mere assumption as persuasive.

We regard the principal consideration leading to the
inclusion of mortgages in the exception from the effect
of our usury statutes as indicating the intention of the
Legislature in so doing, and the intended scope of the

exception, to have been that in foreclosure, the primary means of enforcing a mortgage, the court, in the exercise of its equity powers, could afford relief from usurious features or the consequences thereof which would accomplish substantial justice and sufficiently answer the purposes sought by the statutes against usury. *Cohen* v. *Mansi,* supra, p. 93. To include within the exception an action on the note alone would enable a usurer, by taking a mortgage securing his loan and then ignoring it and bringing action on the note alone, to defeat the predominant purpose of these statutes. Such a result clearly is beyond any reasonable conception of the intent of the Legislature in providing the exception, and a limitation of it to a mortgage above the specified amount ($500), and action upon it as such is justified by the language of the statute, as well as in reason and justice.

The term "mortgage," when employed as here, does not necessarily or ordinarily include the obligation which it is given to secure. Commonly it imports "a written conveyance given by way of security, containing a condition that it shall be void, if the obligation secured by it be duly performed, or accompanied by a written defeasance to that effect. It is this meaning which it carries, when used by the General Assembly, unless the context indicates a different purpose in its use." *State* v. *Hurlburt,* supra, p. 236; *Ansonia Bank's Appeal,* 58 Conn. 257, 261, 18 Atl. 1030; *DeWolfe* v. *Sprague Mfg. Co.,* 49 Conn. 282, 318. A note and a mortgage given to secure it are separate instruments, executed for different purposes and in this State action for foreclosure of the mortgage and upon the note are regarded and treated, in practice, as separate and distinct causes of action, although both may be pursued in a foreclosure suit. *Mechanics Bank* v. *Johnson,* 104 Conn. 696, 701, 134 Atl. 231; *German* v. *Gallo,*

100 Conn. 709, 711, 124 Atl. 837; *Staples* v. *Hendrick*, 89 Conn. 100, 93 Atl. 5. Statutes pertaining to mortgages and, as well, the debt, note or obligation secured thereby, customarily observe the distinction between them. See e. g. General Statutes, §§ 4949, 5080, 5081, 5082, 5083, 5087, 5115, 5116, and 5124. We are unable to accord the significance claimed by the plaintiff and attached by the trial court to the "predominant" use of the word "loan" in the sections involved. This is a necessary and natural consequence of the general subject of the legislation, but a construction of "mortgage," employed in a statute relating to loans, as "mortgage securing a loan" is surely admissible and, in view of other considerations above mentioned, more logical in the present instance than "loan secured by mortgage" or other phrase of similar significance.

On the record there was error, as assigned, in finding without evidence or stipulation that the notes and mortgages were not taken with intent to evade the provisions of § 4732 of the General Statutes. The existence of such an intent, alleged by the defendant in his answer, was a question of fact. *Mutual Protective Corporation* v. *Palatnick*, 118 Conn. 1, 4, 169 Atl. 917. For the purposes of the demurrer testing the sufficiency of the answer, this allegation must be assumed to be true. *Cashman* v. *Meriden Hospital*, 117 Conn. 585, 586, 169 Atl. 915.

Bona fides of the mortgage is an attribute essential to exception under § 4737. This connotes "good faith without fraud or deception; that is, good faith and honesty as distinguished from bad faith." *M. Lowenstein & Sons, Inc.* v. *British-American Mfg. Co.*, 7 Fed. (2d) 51, 53. Whether or not this qualification is fulfilled necessarily depends upon the facts established in the particular case. *Cohen* v. *Mansi*, 113 Conn. 91, 93, 154 Atl. 160. Its existence could not properly be

assumed from the pleadings for purposes of demurrer, especially in view of the allegation, in the answer, of specific intent to evade the statute. This consideration would, of itself, render the sustaining of the demurrer erroneous, as we also find it to have been by reason of the construction accorded the statute in question.

There is error, the judgment is set aside and the case remanded to the City Court of the City of Hartford with direction to overrule the demurrer.

In this opinion the other judges concurred.