ANTHONY FERRIGNO, TRUSTEE *v.* CROMWELL
DEVELOPMENT ASSOCIATES ET AL.
(SC 15673)

Callahan, C. J., and Borden, Berdon, Palmer and McDonald, Js.

Argued October 31, 1997—officially released March 24, 1998

*Max Stuart Case*, with whom, on the brief, was *Leo
J. McManus*, for the appellants (defendants).

*William F. Gallagher,* with whom, on the brief, were *Kurt D. Koehler* and *Edward Krasnow,* for the appellee (plaintiff).

*Opinion*

CALLAHAN, C. J. The sole issue in this appeal is whether a defendant may assert usury as a defense in a deficiency judgment proceeding subsequent to the strict foreclosure of a bona fide real estate mortgage for a sum in excess of $5000. We conclude that General Statutes § 37-9 (3) exempts the loan from the usury law and that, therefore, usury is not a defense to the claim for a deficiency judgment.

The record reveals the following uncontroverted facts and procedural history. The named defendant, Cromwell Development Associates (Cromwell), is a Connecticut partnership. The individual defendants are the general partners of Cromwell.[1] On March 25, 1981, the individual defendants executed a promissory note[2] in the principal amount of $150,000 to the plaintiff,

---

[1] The individual defendants are Maynard A. Selmon, Anthony R. Ferrigno, Jane E. Miller, Janice S. Miller, Elliot Miller, Richard L. Sandefur, Philip Gaynes, Steven Chernok, Sr., acting for Dram Realty also known as Dram Associates, Steven Chernock, Jr., and John R. Chernock. We refer to Cromwell and the individual defendants collectively as the defendants. Another defendant, the Flatley Company, was included as a defendant only because of a claimed interest in the mortgaged premises.

[2] The note provided in relevant part: "ON DEMAND, FOR VALUE RECEIVED, ONE YEAR FROM DATE HEREOF, the [individual defendants], to the extent of their proportionate interest in the realty given as security for this Note, promise to pay the percentage set forth after their names of the total principal balance to ANTHONY R. FERRIGNO, TRUSTEE, TREELAND EMPLOYEES PROFIT & SHARING PLAN & TRUST . . . the sum of ONE HUNDRED FIFTY THOUSAND DOLLARS, together with interest, not in advance, at the rate of Eighteen (18%) Percent per annum, payable quarterly, commencing June 25, 1981 . . . .

"This note is secured by a first mortgage of even date herewith . . . .

"The mortgagor of the mortgage given as security for the repayment of this note is Cromwell Development Associates, a partnership in which the signers hereof are partners . . . ."

Anthony Ferrigno, trustee, who, acting in his capacity as trustee of the Treeland Employees Profit and Sharing Plan and Trust, loaned the individual defendants $150,000. The note provided for the quarterly payment of interest, commencing on June 25, 1981, at the rate of 18 percent per annum[3] and for repayment of the principal on June 25, 1982. As security for the note, Cromwell executed a mortgage deed conveying two parcels of partnership real estate to the plaintiff.

The note is in default, and no payments have been made on it since December 25, 1987. On September 13, 1988, the plaintiff brought this action seeking foreclosure of the mortgage. The defendants raised no defenses to the foreclosure but disputed the amount owed to the plaintiff. The trial court found that the fair market value of the property was $125,000 and that as of November 29, 1994, the amount of principal and interest due on the note was $435,467.04.

A judgment of strict foreclosure was rendered on April 26, 1995, and title to the mortgaged property vested in the plaintiff on October 27, 1995. The plaintiff filed a timely motion for a deficiency judgment pursuant to General Statutes § 49-14 (a).[4] The trial court denied the plaintiff's motion for a deficiency judgment on the grounds that the loan was usurious under General Statutes § 37-4[5] and that, consequently, any deficiency judgment was barred by General Statutes § 37-8.[6] The

---

[3] The trial court found that the parties had executed an enforceable modification agreement changing the rate of interest from 18 percent to 20 percent as of May 25, 1982, until the principal was paid in full.

[4] General Statutes § 49-14 (a) provides in relevant part: "At any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment. . . ."

[5] General Statutes § 37-4 provides in relevant part: "No person . . . shall . . . directly or indirectly, loan money to any person and, directly or indirectly, charge, demand, accept or make any agreement to receive therefor interest at a rate greater than twelve per cent per annum."

[6] General Statutes § 37-8 provides in relevant part: "No action shall be brought to recover principal or interest, or any part thereof, on any loan prohibited by [section] 37-4 . . . ."

plaintiff appealed from the judgment of the trial court to the Appellate Court. The Appellate Court, overruling *Maresca* v. *DeMatteo*, 6 Conn. App. 691, 696, 506 A.2d 1096 (1986) (§ 37-8 bars mortgagee from bringing deficiency judgment proceeding to collect on loan with interest rate greater than 12 percent), reversed the trial court's judgment and remanded the case to the trial court for further proceedings. *Ferrigno* v. *Cromwell Development Associates*, 44 Conn. App. 439, 446, 689 A.2d 1150 (1997).

We granted the defendants' petition for certification to appeal, limited to the question of whether "General Statutes § 37-9 (3)[7] permits a deficiency judgment to be rendered on an otherwise usurious note that is secured by a bona fide real estate mortgage for a sum in excess of $5000." *Ferrigno* v. *Cromwell Development Associates*, 240 Conn. 929, 693 A.2d 300 (1997). We conclude that § 37-9 (3) exempts a bona fide real estate mortgage loan of over $5000 from the purview of § 37-4 and consequently permits a deficiency judgment on such a loan with an interest rate in excess of 12 percent per annum.

Relying on this court's decision in *Atlas Realty Corp.* v. *House*, 120 Conn. 661, 183 A. 9 (1936) (bona fide mortgage exception to usury statutes did not permit mortgagee to bring action on usurious promissory note), the defendants argue that a deficiency judgment proceeding is the "functional equivalent"; see *Maresca* v. *DeMatteo*, supra, 6 Conn. App. 696; of an action on a promissory note, and, consequently, that §§ 37-4 and 37-8 prohibit a mortgagee from seeking a deficiency judgment to recover any outstanding balance, over and above the appraised value of the mortgaged property, after the strict foreclosure of a mortgage that was given

---

[7] General Statutes § 37-9 provides in relevant part: "The provisions of [section] 37-4 . . . shall not affect . . . (3) any bona fide mortgage of real property for a sum in excess of five thousand dollars . . . ."

as security for a loan with an interest rate in excess of 12 percent per annum. We disagree.

A brief overview of the pertinent usury statutes is necessary to our consideration of this issue. Section 37-4 provides in relevant part that "[n]o person and no firm or corporation or agent thereof . . . shall . . . directly or indirectly, loan money to any person and, directly or indirectly, charge, demand, accept or make any agreement to receive therefor interest at a rate greater than twelve per cent per annum." Lenders making usurious loans are subject to criminal penalties and civil forfeiture. General Statutes § 37-7 provides in relevant part that "[a]ny person who . . . violates . . . section 37-4 . . . shall be fined not more than one thousand dollars or imprisoned not more than six months or both." In addition, § 37-8 provides in relevant part that "[n]o action shall be brought to recover principal or interest, or any part thereof, on any loan prohibited by [section] 37-4 . . . ."

It is undisputed that in the present case, the agreed upon interest rate exceeded the statutory maximum rate of 12 percent per annum permitted by § 37-4. A transaction involving an interest rate greater than 12 percent per annum, however, is not necessarily violative of § 37-4 and thereby subject to the criminal penalties and civil forfeiture sanction provided by §§ 37-7 and 37-8. Section 37-9 (3) provides in relevant part that "[t]he provisions of [section] 37-4 . . . shall not affect . . . any bona fide mortgage of real property for a sum in excess of five thousand dollars . . . ."[8] Accordingly,

---

[8] In 1981, § 37-9 was amended to exempt from the purview of § 37-4 loans to business entities in excess of $10,000, provided that the funds are used in the borrower's business or investment activities and not for consumer purposes. See Public Acts 1981, No. 81-267, codified at § 37-9 (4). It is undisputed that the loan at issue in the present case satisfies the requirements of Public Acts 1981, No. 81-267. Because that act took effect after the loan in question was made, however, the plaintiff is unable to rely on it.

bona fide "mortgages" for amounts in excess of $5000 with interest rates greater than 12 percent per annum are exempt from the operation of § 37-4, and, consequently, actions to recover principal or interest on such "mortgages" are not prohibited by § 37-8, nor is the mortgagee subject to criminal penalties under § 37-7.

There are two possible interpretations of the term "mortgage" in § 37-9 (3). The first is that "mortgage" refers only to the actual conveyance of real estate that is made for the purpose of securing a loan. Under this construction, which is advocated by the defendants, even if the loan that is secured by a bona fide mortgage of real estate is usurious, the mortgage deed documenting the real estate conveyance that secures the loan is unaffected by § 37-4. Consequently, although actions to recover principal or interest on the loan are prohibited by § 37-8 and the lender is subject, under § 37-7, to criminal penalties for making a usurious loan, actions to foreclose on the mortgage conveyance itself are permitted. Under this interpretation, the mortgagee, therefore, must be satisfied with obtaining the collateral real estate by foreclosure because he is not permitted to pursue any other action to recover any deficiency on the usurious loan.

The second possible interpretation of the term "mortgage" in § 37-9 (3) is that "mortgage" refers to the loan that is secured by the mortgage conveyance. Under this interpretation, "mortgage" in § 37-9 (3) must be read as "mortgage loan" or, more precisely, "loan secured by a mortgage." Under this construction, a loan for a sum in excess of $5000 that is secured by a bona fide mortgage of real estate is not affected by § 37-4, the usury statute, and, consequently, despite § 37-8, a deficiency judgment may be sought to recover principal and interest on the loan in conjunction with the foreclosure action. Moreover, the mortgagee is not subject to the

criminal penalties provided by § 37-7. We agree with this interpretation.

In construing a statute, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Jupiter Realty Co.* v. *Board of Tax Review,* 242 Conn. 363, 368, 698 A.2d 312 (1997); see *State* v. *Burns,* 236 Conn. 18, 22–23, 670 A.2d 851 (1996).

We begin with the language of the usury statutes. A review of the legislative genealogy of the statutory scheme concerning usury is informative in this regard. When the usury statutes were first enacted in 1907, the predecessor to §§ 37-4 and 37-9 (3) provided in relevant part that "[n]o person . . . other than a . . . bank . . . shall directly or indirectly loan money to any person and directly or indirectly charge, demand, accept, or make an agreement to receive . . . interest at a greater rate than fifteen per centum per annum. The provisions of this section shall not apply to . . . any bona fide mortgage of real or personal property." Public Acts 1907, c. 238, § 1. Section 5 of that public act, the predecessor to § 37-8, provided in relevant part that "[n]o action shall be brought on any loan prohibited by this act to collect either principal or interest or any part of either . . . ." Public Acts 1907, c. 238, § 5. In 1911, the usury statutes were amended in two relevant ways: (1) the statutory maximum rate of interest was reduced to 12 percent per annum; and (2) the exception for mortgages was revised to exempt only "any bona fide mortgage of real property exceeding the sum of five hundred dollars." Public Acts 1911, c. 244, §§ 1 and

6. In 1955, the mortgage exception was amended further to exempt "bona fide mortgage[s] of real property for a sum in excess of five thousand dollars." See General Statutes (Sup. 1955) § 2891d. The usury statutes have remained unchanged in relevant part since 1955. See General Statutes §§ 37-4, 37-8 and 37-9 (3).

"We presume that the legislature had a purpose for each sentence, clause or phrase in a legislative enactment, and that it did not intend to enact meaningless provisions." *Hall* v. *Gilbert & Bennett Mfg. Co.*, 241 Conn. 282, 303, 695 A.2d 1051 (1997); *Zichichi* v. *Middlesex Memorial Hospital*, 204 Conn. 399, 407, 528 A.2d 805 (1987). " 'It is a basic tenet of statutory construction that the legislature did not intend to enact meaningless provisions. . . . Accordingly, care must be taken to effectuate all provisions of the statute.' " (Citation omitted.) *State* v. *Szymkiewicz*, 237 Conn. 613, 621, 678 A.2d 473 (1996); see *State* v. *Spears*, 234 Conn. 78, 93, 662 A.2d 80, cert. denied, 516 U.S. 1009, 116 S. Ct. 565, 133 L. Ed. 2d 490 (1995). " '[S]tatutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant . . . .' " *State* v. *Szymkiewicz*, supra, 621; see *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, 232 Conn. 91, 100–101, 653 A.2d 782 (1995); *Hopkins* v. *Pac*, 180 Conn. 474, 476, 429 A.2d 952 (1980). When the usury statutes were enacted in 1907, § 1 prohibited loans with interest rates greater than 15 percent but exempted bona fide mortgages from that prohibition. Public Acts 1907, c. 238, § 1. The provision exempting any bona fide "mortgage" from the purview of § 1 was necessary only if § 1 was capable of somehow prohibiting such mortgages. The only transactions prohibited by § 1, however, were not mortgages but loans with an interest rate in excess of 15 percent. The legislature, therefore, must have intended the exemption for any bona fide "mortgage" to apply to the *loan* that is secured by the mortgage, rather than simply to the mortgage conveyance

that secures the loan. If the term "mortgage" in § 1 were to be construed to mean a separate real estate transaction, divorced from the loan itself, the exemption under § 1 for any bona fide "mortgage" would have served no purpose because such real estate transactions were not prohibited by § 1.

We turn next to the legislative history of the usury statutes. "[I]t is now well settled that testimony before legislative committees may be considered in determining the particular problem or issue that the legislature sought to address by the legislation. . . . This is because legislation is a purposive act . . . and, therefore, identifying the particular problem that the legislature sought to resolve helps to identify the purpose or purposes for which the legislature used the language in question." (Citations omitted.) *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 450, 692 A.2d 742 (1997); see *State* v. *Ledbetter*, 240 Conn. 317, 337, 692 A.2d 713 (1997); *Frillici* v. *Westport*, 231 Conn. 418, 430–31 n.15, 650 A.2d 557 (1994); *State* v. *Magnano*, 204 Conn. 259, 273–74 n.8, 528 A.2d 760 (1987). Accordingly, we begin with the earliest available legislative history, the committee hearing on the bill that ultimately became Public Acts 1911, c. 244, §§ 1 and 6. During that hearing, while discussing § 1 of Public Acts 1907, c. 238, the predecessor to §§ 37-4 and 37-9 (3), Representative Walter Monagan remarked that "[t]he . . . law exclude[s] banks and mortgagees of real estate [from the prohibition against making loans with an interest rate in excess of fifteen percent]. . . . If I loan you $1000 on no security . . . I can only charge you fifteen percent a year. If I charge any more than that, I am guilty of a criminal offense. But if I have . . . real estate worth $4000 . . . and borrow $2000, you can charge me twenty-five percent, fifty percent, [or even] one hundred percent interest on it." Conn. Joint Standing Committee Hearings, Finance, 1911 Sess., p. 186. These

remarks suggest that the term "mortgage" in § 1 refers to the loan, the transaction that is potentially prohibited by § 1, rather than only to the real estate conveyance. In the committee hearing on the bill that ultimately became Public Acts 1955, No. 548, which increased the threshold amount of the exception for bona fide mortgages of real property from $500 to $5000, Richard Rapport, vice chairman of the legislative committee of the Connecticut Bankers Association, noted that the proposal before the committee was that "the exclusion from usury now granted under our law on *mortgage loans* over $500 be extended . . . ." (Emphasis added.) Conn. Joint Standing Committee Hearings, Banks, 1955 Sess., p. 83. Rapport's testimony also supports the conclusion that the statutory exception for bona fide mortgages applies to the mortgage loan, not just to a mortgage conveyance that secures the loan.

" 'To determine legislative intent, it is often useful to examine the title of a proposed bill . . . .' " *State* v. *State Employees' Review Board*, 239 Conn. 638, 649, 687 A.2d 134 (1997); *State* v. *Burns*, 236 Conn. 18, 25, 670 A.2d 851 (1996). "The title of legislation when it is acted upon by the legislature is significant and often a valuable aid to construction . . . ." (Internal quotation marks omitted.) *State* v. *State Employees' Review Board*, supra, 649; *Zichichi* v. *Middlesex Memorial Hospital*, supra, 204 Conn. 405. The bill that ultimately became Public Acts 1955, No. 548, was entitled "An Act Concerning Interest on *Mortgage Loans*"; (emphasis added) 6 H.R. Proc., Pt. 6, 1955 Sess., p. 3077; also indicating that the term "mortgage" in the exception for bona fide mortgages refers to the mortgage loan, not simply to the mortgage conveyance.

This court's earliest interpretations of the usury statutes similarly suggest that the term "mortgage" in the exception for bona fide mortgages refers to the mortgage loan. In *State* v. *Hurlburt*, 82 Conn. 232, 72 A. 1079

(1909), for example, the defendant appealed from a judgment of conviction for violating the usury statutes. On appeal, the defendant maintained that his making of the loan at a rate greater than the statutory maximum did not constitute a violation of the usury statute because the loan at issue had been secured by a bona fide mortgage. The court in *Hurlburt* made a finding of fact that the loan at issue was not secured by a bona fide mortgage and consequently affirmed the defendant's judgment of conviction. Id., 235. The court's reasoning in *Hurlburt* strongly suggested, however, that despite the fact that the defendant had charged a rate of interest greater than the statutory maximum, had there been a bona fide mortgage, the loan would not have been illegal. Accordingly, *Hurlburt* supports a construction of the term "mortgage" in § 37-9 (3) to mean the loan that is secured by a bona fide mortgage conveyance.

In *Cohen* v. *Mansi*, 113 Conn. 91, 154 A. 160 (1931), the defendant appealed from a judgment of foreclosure, maintaining that the loan at issue, which was secured by a mortgage conveyance, was usurious. This court first considered whether the then current mortgage exemption, which applied to bona fide "mortgages" of real property for a sum in excess of $500; see General Statutes (1930 Rev.) § 4737; violated the equal protection clause of the fourteenth amendment to the United States constitution. *Cohen* v. *Mansi*, supra, 92. The court noted in *Cohen* that "a classification of *loans* according to the amounts involved is a not unusual feature of legislation for the protection of borrowers . . . . Classification upon such a basis being permissible, the fixing of the line between *loans* to be included within the statute [§ 4737] and those to be omitted from its operation is for the legislature, and their action will only be held violative of the Constitution if it is clearly arbitrary and unreasonable." (Citations omitted; emphasis added.) Id., 92–93. The court concluded that

the "mortgage" exemption was not violative of the constitution. Id., 92. Thus, *Cohen* also supports a construction of the term "mortgage" in the usury exemption of § 37-9 (3) to mean the loan that is secured by a bona fide mortgage conveyance rather than the mortgage conveyance that secures the loan.[9]

In *Atlas Realty Corp.* v. *House*, supra, 120 Conn. 671, however, this court construed the term "mortgage" in the predecessor to § 37-9 (3) to mean the mortgage securing a loan, which would seem to indicate that only the mortgage conveyance itself is unaffected by § 37-4 by reason of § 37-9 (3). The plaintiff in *Atlas Realty Corp.* did not bring an action to foreclose on his mortgage, but rather chose to bypass his security and instead sued solely on the two promissory notes that had been secured by the mortgage. Id., 662. On appeal, the defendant maintained that the trial court improperly had refused to allow him to assert usury as a defense. Id., 662–63. Reasoning that the equitable defense of unconscionability is available in foreclosure proceedings and that, consequently, the defense of usury is not required in such proceedings, the court in *Atlas Realty Corp.* concluded, without making any reference to legislative history or to the overall statutory scheme, that the usury exemption for bona fide "mortgages" did not apply to the underlying indebtedness, and that, therefore, the exception permitted the mortgagee to assert only his right to foreclose on the mortgage but did not permit him to bring an action on the notes secured by the mortgage. Id., 665–66.

---

[9] See also *Leventhal* v. *Martucci*, 3 Conn. Sup. 22 (1935), in which the trial court stated that the term mortgage "clearly applies to the indebtedness itself which is secured by a mortgage. It would be entirely negatory to provide that a mortgage should be valid and at the same time provide that the note secured thereby was void. The mortgage is nothing without the debt secured thereby. If the debt is void it follows that the mortgage is void. It would be impossible for there to be a void debt secured by a valid mortgage."

*Atlas Realty Corp.* indicates, therefore, that the loan in the present case is within the scope of § 37-4 and the balance is uncollectible because the loan is usurious, but that the mortgage is enforceable and may be foreclosed. Narrowly construing the term "mortgage" in § 37-9 (3) to mean only that the mortgage conveyance alone is exempted from the purview of § 37-4, however, has bizarre and inconsistent consequences. If a loan is usurious, the loan is not enforceable. See General Statutes § 37-8. The enforceability of a mortgage conveyance that secures such a loan is contingent on the debtor's defaulting on the illegal loan.[10] Consequently, when a trial court finds in a foreclosure action that the loan has been defaulted and permits the foreclosure to proceed, the court actually is enforcing the plaintiff's rights on an illegal loan and thereby disregarding the spirit, if not the letter, of § 37-8. Furthermore, construing the term "mortgage" to mean the mortgage conveyance only, rather than the mortgage loan, allows a mortgagee, who is subject to criminal penalties for making a usurious loan, to benefit from that illegal loan by foreclosing on the mortgage given to secure the illegal loan.

"It is . . . a rule of statutory construction that those who promulgate statutes or rules do not intend to promulgate statutes or rules that lead to absurd consequences or bizarre results." (Internal quotation marks

---

[10] Connecticut adheres to the title theory of mortgages. A mortgagee in Connecticut, both by common-law rule and by statute, is deemed to have taken legal title upon the execution of a mortgage on real property. *Red Rooster Construction Co.* v. *River Associates, Inc.*, 224 Conn. 563, 569, 620 A.2d 118 (1993). In substance and effect, however, and except for a very limited purpose, the mortgage is regarded as mere security and the mortgagor is regarded for most purposes as the sole owner of the land. Id. "The mortgagee has title and ownership enough to make his security available, but for substantially all other purposes he is not regarded as owner, but the mortgagor is so regarded, always subject of course to the mortgage." (Internal quotation marks omitted.) Id.

omitted.) *State* v. *DeFrancesco*, 235 Conn. 426, 437, 668 A.2d 348 (1995). " '[A] statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent.' " *State* v. *Spears*, 234 Conn. 78, 91, 662 A.2d 80, cert. denied, 516 U.S. 1009, 116 S. Ct. 565, 133 L. Ed. 2d 490 (1995), quoting 2A J. Sutherland, Statutory Construction (5th Ed. 1992) § 46.05, p. 103. " 'If there are two possible interpretations of a statute, we will adopt the more reasonable construction over one that is unreasonable.' " *Coley* v. *Camden Associates, Inc.*, 243 Conn. 311, 320, 702 A.2d 1180 (1997); *Turner* v. *Turner*, 219 Conn. 703, 712–13, 595 A.2d 297 (1991).

We are mindful that "[i]n assessing the force of stare decisis, our case law has emphasized that we should be especially cautious about overturning a case that concerns statutory construction." *Conway* v. *Wilton*, 238 Conn. 653, 681, 680 A.2d 242 (1996) (*Peters, C. J.*, dissenting). In light of the language, legislative history and overall scheme of the usury statutes, we do not believe that the legislature possibly could have intended the bizarre conflict between the civil and criminal provisions of the usury law that follows from construing the term "mortgage" in § 37-9 (3) to mean the mortgage conveyance alone rather than the mortgage loan. To the extent that this court's decision in *Atlas Realty Corp.* indicated that the term "mortgage" in § 37-9 (3) refers only to the mortgage conveyance and not to the mortgage loan, that decision is overruled. We conclude, therefore, that the defense of usury is not available to the defendants because § 37-9 (3) exempts the secured loan, not only the mortgage conveyance securing the loan, from the operation of § 37-4.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.