[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Miller Brewing Company ("Miller") appeals from the June 26, 1997 decision of the defendant State of Connecticut, Department of Consumer Protection Liquor Control Commission ("Commission") which denied Miller's request to terminate the distributorship for Miller Products held by the defendant City Beverage, Inc. ("City").
Miller is a manufacturer of beer products, which distributes its products through a network of wholesale distributors. City is the exclusive distributor of Miller products in Windham County, Connecticut pursuant to a written May 1, 1983 distributor agreement with Miller. Miller determined that City had breached its distributor agreement and sought to terminate the arrangement.
General Statutes § 30-17[1] sets forth a statutory procedure concerning the termination by an alcoholic beverage manufacturer of a distributorship. The manufacturer must provide prior written notice of the termination to the distributor and Commission. A termination may be only for just and sufficient cause. The Commission shall hold a hearing to determine whether just and sufficient cause for the termination exists.
Miller sent notice of the termination on September 30, 1996. Hearings on whether just and sufficient cause existed were held on January 23, 1997, January 28, 1997, February 4, 1997 and February 11, 1997. Miller and City both participated in the hearings with legal counsel. The parties introduced testimonial and documentary evidence as well as post hearing briefs.
The Commission's decision determined that the grounds alleged CT Page 10381 by Miller did not warrant termination of City's distributorship pursuant to § 30-17.
The plaintiff appeals pursuant to the Uniform Administrative Procedure Act ("UAPA") § 4-166, et seq., § 4-183. The answer and record were filed on September 29, 1997. Briefs were filed by Miller on February 18, 1996, City on March 26, 1998, and the Commission on April 20, 1998. A reply brief was filed by Miller on June 30, 1998. The parties were heard in oral argument on July 28, 1998.
The plaintiff argues that it has "just and sufficient cause" to terminate the distributor agreement, that pursuant to §30-17 (a)(2)(B) a breach of the reasonable and material obligation of a distributor agreement warrants termination by the manufacturers.
"We will not adopt an interpretation that imparts ambiguity where none is apparent, or that engrafts language onto the statute that appears nowhere in the text." (Internal quotation marks omitted.) Office of Consumer Counsel v. Dept. of PublicUtility Control, 246 Conn. 18, 40 (1998); Connecticut Assn. ofNot-For-Profit Providers for the Aging v. Dept. of SocialServices, 244 Conn. 378, 395 (1998).
Just and sufficient cause is defined in § 30-17 (a)(2). It sets forth an objective "reasonable person" standard which requires the equities of both the wholesaler and manufacturer. The construction sought by the plaintiff is entirely inconsistent with the express language of the statute. If a substantial breach of the distribution agreement would require a just and sufficient cause finding, then the legislatively directed consideration of the equities would not occur.
"It is a basic tenet of statutory construction that the legislature did not intend to enact meaningless provisions. . . . Accordingly, care must be taken to effectuate all provisions of the statute." (Citations omitted; internal quotation marks omitted.) Ferrigno v. Cromwell Development Associates,244 Conn. 189, 196 (1998). "A statute should be read as a whole and interpreted so as to give effect to all of its provisions. . . ." (Brackets omitted; citations omitted; internal quotation marks omitted.) Figueroa v. C S Ball Bearing, 237 Conn. 1, 6 (1996). "Statutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or CT Page 10382 insignificant. . . ." (Brackets omitted; internal quotation marks omitted.) Ferrigno v. Cromwell Development Associates, supra, 196.
The plaintiff argues that a construction that does not equate substantial contract breach with just and sufficient cause is constitutionally defective.
The § 30-17 just and sufficient cause standard was originally enacted in 1971 (Public Acts 1971, No. 605); however, it only applied to distributorships which had existed for twenty-four months. The twenty-four month period was reduced to six months in 1981 (Public Acts 1981, No. 81-367. An out-of-state shipper challenged the retroactive application of such change on constitutional claims of contracts clause, due process and equal protection. In Schieffelin Co. v. Department of Liquor Control,194 Conn. 165 (1984), the court affirmed the constitutionality of the retroactive application of § 30-17 to distributors in existence more than six, but less than twenty-four months.
The court in Schieffelin followed the contract clause analysis set forth in Energy Reserves Group, Inc. v. Kansas Power Light Co., 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983). The criteria involves a threshold question as to whether the state law in fact operated as a substantial impairment of a contractual relationship. Schieffelin Co. v. Department ofLiquor Control, supra, 194 Conn. 177. If the impairment is substantial, its severity is weighed with the extent to which it frustrate's a party's reasonable contractual expectations. Id., 177-78. A factor which is also necessarily considered is the history of the regulation. Id., 178.
Severe impairment will be subject to an increased level of scrutiny. Allied Structural Steel Co. v. Spannaus, 438 U.S. 234,245, 98 S.Ct. 2716, 57 L.Ed.2d 727, reh. denied, 439 U.S. 886,99 S.Ct. 233, 58 L.Ed.2d 201 (1978). "On the other hand, no matter how severe the impairment, a state regulation which does no more than restrict a party to gains it reasonably expected from the contract does not necessarily constitute a substantial impairment within the meaning of the contract clause. . . . Moreover, if one buys into an enterprise already regulated in the particular to which he now objects, he buys subject to further legislation upon the same topic. . . ." (Citations omitted.)Schieffelin Co. v. Department of Liquor Control, supra,194 Conn. 178. CT Page 10383
The Schleffelin court went on to hold:
 In the face of the pervasive regulatory power which the state has exercised over the liquor industry, the reasonable expectations of the plaintiffs at the time they entered their business relationships with CDI, Brescome and Eder, and the scope of the regulatory provisions in existence at the time these relationships were created, reducing the holding period for just cause terminations from twenty-four to six months can hardly be regarded as either cataclysmic or as a substantial impairment of the plaintiffs' distributorship relationships.
 Even a substantial impairment of a contractual relationship may be justified if the state regulation has a significant and legitimate purpose. Energy Reserves Group, Inc. v. Kansas Power Light Co., supra, 403; United Trust Co. v. New Jersey, supra, 22. In considering this aspect of the constitutional problem we cannot ignore the peculiar nature of the industry being regulated. "Because of the danger to the public health and welfare inherent in the liquor traffic, the police power to regulate and control it runs broad and deep, much more so than the power to curb and direct ordinary business activity." Ruppert v. Liquor Control Commission, 138 Conn. 669, 674, 88 A.2d 388 (1952).
 Section 2 of the twenty-first amendment reserves to the states certain powers to regulate traffic in liquor. "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." This amendment has been recognized as conferring something more than the normal state authority over public health, welfare and morals. California v. LaRue, 409 U.S. 109, 114, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), reh. denied, 410 U.S. 948, 93 S.Ct. 1351, 35 L.Ed.2d 615 (1973). CT Page 10384 Nor is the regulatory power embodied in this amendment limited to importing and transporting alcohol. Rather, it grants the states virtually complete control over whether to permit importation and sale of liquor and how to structure the liquor distribution system. California Retail Liquor Dealers Assn. v. Midcal Aluminum, Inc., 445 U.S. 97, 110, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980).
 A statutory method, such as that employed in § 30-17, which prescribes the conditions under which distributorships may be terminated is a legitimate method of structuring the state's liquor distribution system. Additionally, it serves the equally important purpose of preventing out-of-state shippers from dominating Connecticut wholesalers. See Joseph E. Seagram, Sons, Inc. v. Hostetter, 384 U.S. 35, 48, 86 S.Ct. 1254, 16 L.Ed.2d 336, reh. denied, 384 U.S. 967, 86 S.Ct. 1583, 16 L.Ed.2d 679 (1966).
 Economic dominion of one tier of distribution upon another lends itself to all sorts of abusive practices.
 Schieffelin Co v. Department of Liquor Control, supra,194 Conn. 182-83,
The same analysis and result apply to plaintiff's contract clause claim. Their inability to terminate their contract, assuming substantial breach, relates to the expected historical and substantial interest of the state in closely regulating alcoholic beverage distribution.
The unique nature of state regulation of liquor distribution also limits the review of the due process and equal protection claims. See Schieffelin Co v. Department of Liquor Control, supra, 196 Conn. 185-87.
The economic regulations involved in § 30-17 are subject to the "mildest review" and "carry a presumption of constitutionality." Schieffelin Co. v. Department of LiquorControl, supra, 194 Conn. 186. This is especially the case as the claims under the United States Constitution in that the CT Page 10385twenty-first amendment gives the state "virtual complete control over . . . how to structure the liquor distribution system."California Retail Liquor Dealers Assn. v. Midcal Aluminum. Inc.,445 U.S. 97, 110, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980);Brunswick Corporation v. Liquor Control Commission, 184 Conn. 75,84 (1981).
There is no basis for the court to ignore the express statutory direction for the Liquor Control Commission to consider the equities in distribution termination cases.
The Commission's decision found equities which precluded termination of the distribution agreement. A review of such conclusion is subject to the substantial evidence rule.
"Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact." (Citations omitted; internal quotation marks omitted.) Dolgner v. Alander, 237 Conn. 272, 280 (1996).
"The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. General Statutes § 4-183(j)(5) and (6). An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action." (Citations omitted; footnote omitted; internal quotation marks omitted.) Dolgner v.Alander, supra, 237 Conn. 281 Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Citations omitted; internal quotation marks omitted.) Id.
The Commission's findings relating to the market penetration by City; sales quota performance by City in the summer of 1996; CT Page 10386 pervasiveness of average product throughout plaintiff's New England distributorship; shared responsibility for over age and out-of-stock product and City's regular as well as emergency deliveries are all supported by substantial evidence in the record. (See Return of Record (ROR), Transcript dated January 23, 1997, pp. 86-87, 145-47, 165-71, 174-75; Transcript dated February 4, 1997, pp. 360, 364-74, 385, 387-89.)
Furthermore, there is substantial evidence in the record to support the Commission's finding that City's cash flow difficulties do not rise to the level of establishing insufficient working capital. Specifically, the Commission found that: City had experienced periodic cash flow difficulties as evidenced by several returned checks; since August 1995, City has been paying Miller in a timely manner; and Miller does not have, nor was City advised of, criteria to determine insufficient working capital. (See ROR, Transcript dated January 23, 1997; pp. 23-26, 58-60; Transcript dated January 28, 1997, pp. 198-200, 204-05; Transcript dated February 4, 1997, pp. 377-380.)
It was within the Commission's statutorily directed authority to consider such factors in weighing the equities to determine if termination was justified.
The decision is affirmed and the appeal is dismissed.
Robert F. McWeeny, J.